Argued at Pendleton May 5; affirmed October 21; modified on petition for rehearing November 25, 1930

KREBS ET AL. *v.* PERRY ET AL.
and
HYND BROS. CO. *v.* PERRY ET AL.

(292 P. 319, 293 P. 432)

*Jay Bowerman* of Portland (C. L. Sweek of Heppner and S. E. Van Vactor of The Dalles on the brief) for appellants.

*C. Z. Randall* of Pendleton (James A. Fee of Pendleton on the brief) for respondents.

RAND, J. These two suits were separately brought and tried in the court below and were each decided in favor of the defendants and, in each suit, the plaintiffs have appealed. The two cases were argued together upon the appeal and, since they involve substantially the same questions of fact and law and the parties consent thereto, they will be decided together.

The plaintiffs in both suits and the defendant Henriksen each separately own certain real premises on Willow creek in Morrow county which are in part irrigated by water diverted from said stream by means of a ditch known as the High Line ditch. Said ditch crosses the premises of the plaintiffs and extends down to the lands of the defendant Henriksen. The rights respectively of the plaintiffs and the defendant Henriksen to the use of said ditch for the irrigation of parts of their respective premises grow out of two written contracts.

The first contract was entered into on November 10, 1902, between Mary E. Cecil, the predecessor in interest of Krebs Brothers, as party of the first part, and the Big Flat Cattle Company, the predecesor in interest of Hynd Bros. Company, J. W. Osborn, another predecessor in interest of Krebs Brothers, and W. B. Ewing, a predecessor in interest of Henriksen, as parties of the second part. By the terms of said contract, said Cecil granted unto said second parties, their heirs and assigns forever the right to construct and maintain an irrigation ditch over and across her premises for the purpose of irrigating the premises of each of the contracting parties, which, because of their elevation, could not be irrigated by the ditches then existing upon the premises of each party. In consideration of said grant of said ease-

ment by said Cecil, it was expressly stipulated and agreed that said "first party (referring to Cecil), her heirs and assigns, do and shall have the right and privilege to run, take and use from said ditch all water which she, or they, may desire for irrigation purposes to the exclusion of all other persons." The contract also provided that said second parties shall construct the ditch and maintain the same at their own cost and expense, three-sevenths thereof to be paid by the Big Flat Cattle Company, three-sevenths by Ewing, and one-seventh by Osborn. It also expressly provided as to each of said second parties, that they, their heirs and assigns "shall have the right and privilege to run, take and use from said ditch all water which it, or they, may desire for irrigation purposes, not exceeding" three-sevenths by the Big Flat Cattle Company, three-sevenths by Ewing and one-seventh by Osborn, "of the amount of water remaining in said ditch after said first party has used and exercised her right to the same." Said contract also reserved to said Cecil all her existing rights in and to all her other irrigation ditches.

The second of said contracts was entered into on January 7, 1903, by and between the Big Flat Cattle Company, as party of the first part, and said Ewing and Osborn, as parties of the second part. In and by its terms, the Big Flat Cattle Company granted to Osborn and Ewing a perpetual easement over its land for the construction and maintenance of the ditch referred to in the first contract, and the second contract provided that the three contracting parties should construct the ditch and bear the expense thereof and be entitled to the use of the water in the same proportions that were stipulated in the first of said contracts. It also expressly provided, as in the

first contract, that each and all said contracting parties should be entitled only to take from the ditch and use their proportionate part of the water flowing therein, "after Mary E. Cecil, her heirs and assigns have used and exercised their right to the same as set forth in an agreement made and entered into by the parties hereto and the said Mary E. Cecil, dated 10th day of November, 1902."

It is admitted that in 1903, the ditch now known as the High Line ditch was constructed under and in accordance with the terms of said contracts and that, except in respect to the matters hereinafter stated, the ditch has at all times been maintained and operated in conformity with the terms of said contracts. It is also stipulated that in the summer and fall of 1910 proceedings were had before the State Water Board and in the circuit court for Morrow county for the purpose of determining the relative rights of all claimants to the use of the waters of Willow creek, and that a final decree was entered in said court and proceedings on December 12, 1910; that by said decree the rights of all the parties to that proceeding, whose interests or the interests of their successors are involved in this litigation, to the use of the waters of said creek were fixed as follows:

For the irrigation of lands now owned by Krebs Brothers, in section 4, township 1 north, range 23 east, W. M., .74 cubic feet per second for 44½ acres with a priority of 1895; in sections 20, 29, 28, 32 and 33, township 2 north, range 23 east, W. M., 1.33 cubic feet per second for 80 acres of land with a priority of 1873; 1.09 cubic feet per second for 114.5 acres with a priority of 1905; in section 20, upon the lands which Osborn owned at the time of entering into the contracts referred to .52 cubic feet per second for 31 acres .

with a priority of 1875; .53 cubic feet for 31½ acres with a priority of 1903.

For the irrigation of lands now owned by Hynd Bros. Company, which it acquired by mesne conveyance from the Big Flat Cattle Company, 3.94 cubic feet per second for 236.33 acres with a priority of 1894.

For the irrigation of lands then owned by Sarah Ewing to whose rights the defendant Henriksen has since succeeded .53 cubic feet per second for 31½ acres with a relative priority of 1897.

For the irrigation of lands then owned by W. B. Ewing, since acquired by Henriksen, 2.25 cubic feet per second for 135 acres with relative priority of 1892; 1.74 cubic feet per second for 104 acres with relative priority of 1906.

For the irrigation of lands then owned by H. S. Ewing and since acquired by Henriksen 1.27 cubic feet per second for 75.8 acres with a relative priority of 1892.

On August 18, 1908, the Big Flat Cattle Company entered into a written contract with the three Ewings, W. B., Sarah and H. S., the grantors and predecessors in interest of the defendant Henriksen, in and by the terms of which the said Big Flat Cattle Company granted to said Ewings a right of way across its premises for the construction and maintenance of a ditch now known as the Ewing ditch, and in and by said contract it was agreed that the Big Flat Cattle Company should have the right to take and use from the ditch "all water which it and its successors or assigns may desire for irrigating purposes to the exclusion of the parties of the second part, their heirs or assigns and to the exclusion of all persons whomsoever." It was also agreed that the said Ewings should have the

right to take and use from the ditch for irrigating purposes all water remaining after the said Big Flat Cattle Company had used such water as it desired to use for the irrigation of its premises. Thereafter the Big Flat Cattle Company sold and conveyed its premises and water rights to Frank B. Kistner, who in turn conveyed to Hynd Bros. Company. While Kistner was the owner thereof, he commenced a suit to restrain Aubrey E. Perry as water master and Henriksen from interfering with his right to divert from the Ewing ditch water for the irrigation of his premises as provided in the contract last referred to. Thereafter in such suit such proceedings were had that on March 12, 1917, a decree was entered in said cause in the circuit court for Morrow county, in and by the terms of which it was held and decreed that:

"The contract of August 8th, 1908, between the Big Flat Cattle Company and the defendants herein is in full force and effect and binds both the plaintiff and the defendants in this suit as to the use of the Rhea or Ewing ditch. That defendants have not lost or forfeited any of their rights under said contract but that their rights to the use of water through said ditch is limited and determined by such contract.

"That the plaintiff and his successors in interest to the title to his said land are entitled to have the prior right to the use of all or any part of the waters flowing in said Rhea or Ewing ditch for the purpose of irrigating his lands described in the findings of fact, until his reasonable requirements for such purposes have been fully satisfied, and that such right is appurtenant to plaintiff's said lands; that the surplus water remaining in said ditch or flowing therein after plaintiff has taken all the water he can economically and beneficially use, or after the reasonable requirements of plaintiff's land have been fully satisfied, are appurtenant to the lands of the defendants and they are entitled to the use thereof until the rea-

sonable requirements of the defendants for the irrigation of their lands described in the findings of fact herein have been fully satisfied. In the use of water from said ditch plaintiff is entitled to adopt and use any reasonable method of diversion not inconsistent with the terms of this decree. The reasonable requirements of both plaintiff and defendant shall have been satisfied when they shall have received all the water that is allowed under the law pertaining to the duty of water for the lands irrigated; that is to say, each party is limited to the economical and beneficial use of said water. * * * That the defendants and each of them and their agents and servants, and all persons acting for them or under them, and their successors in interest, be and they are hereby forever enjoined and restrained from interfering in any way with the plaintiff's use and enjoyment of the waters flowing in said Rhea or Ewing ditch until his reasonable requirements have been satisfied as herein defined. They are further hereby perpetually enjoined and restrained from interfering with any gate or structure erected by plaintiff in said ditch or by him maintained therein which is reasonably necessary for plaintiff's enjoyment of his rights in said ditch and to the waters flowing therein to which he is entitled as defined by this decree.''

■ No appeal was taken from said decree. The same became and is a final decree and is binding upon the defendant water master in this suit as well as the defendant Henriksen in so far as it relates to the rights of the plaintiff Hynd Bros. Company. The entire record in that suit was offered as an exhibit not only in the suit brought by Hynd Bros Company against the defendants but also in the suit brought by the Krebs Brothers against the defendants, and it was, in effect, stipulated that said judgment roll should be considered by the court not only in the Hynd Bros. suit but also in the suit brought by the Krebs Brothers, in so far as the facts recited therein

were applicable to the rights of the defendants in both suits. The decision and decree in the said Kistner suit were rendered by the late Honorable Gilbert W. Phelps, who was then the circuit judge for Morrow county, and in deciding said suit the court said:

"The difficulty in this case seems to have arisen largely by reason of a misunderstanding. It is established by the evidence that the water master for one reason or another determined that plaintiff's lands had received all the water to which they were entitled. It is also fairly well established that the water master was mistaken, but this fact does relieve either party from fault. Certainly defendants cannot be blamed for trying to get water to their crops which were suffering for a lack of it, where the privilege of taking the water had been extended to them by the water master. The mistake was made in attempting to take the water through the ditch in question prior to the time when plaintiff had received sufficient water for his own lands. This was caused by the failure of the water master either to consider the contracts fixing the right to the use of the ditch or his failure to make a thorough examination of plaintiff's lands so as to intelligently determine whether sufficient water had been applied. Probably both causes contributed to the result. Defendants' right to the use of the so-called Ewing, or Rhea ditch, is limited by the terms of the contract between the parties, and by the case of *Ewing v. Rhea,* 37 Or. Defendants were not obliged to enter into the contract, but they did enter into it and are bound by its terms. The adjudication merely fixed the priorities as to the use of water, it did not and could not alter the terms of the contract. It is therefore plain that plaintiff is entitled to the first use of the ditch, even to the extent of taking water that under other conditions would go to the defendants. This does not mean that plaintiff is entitled to usurp any prior rights which the defendants may have under the adjudication, but it means that if it is desired to utilize such priority as against plaintiff under the contract they must use it by getting the

water to their lands in some other way than through the ditch across plaintiff's lands. Of course, the amount of water to be taken by plaintiff must be limited to a beneficial use and for irrigation purposes. Plaintiff's needs or desires will be deemed satisfied when he has received all that is allowed under the rule of law pertaining to the duty of water.

"Moreover in the application of water under the contract plaintiff cannot waste water by applying more on some portions of his tract than necessary and then claim additional water for the part not sufficiently irrigated.

"There is no reason why the ditch should not be permitted to carry a full head of water and if, when so utilized there is more water than plaintiff can use beneficially and economically at the time, then defendant should have the use of the overflow or surplus. It would seem from the evidence that the first lateral gate is an unnecessary interference with the best use of the ditch. Certainly plaintiff is entitled to use the ditch so as to irrigate his land, but at the same time such use must be regulated so as to cause as little inconvenience and loss to defendant as possible. Defendants must see to it that their use of the ditch does not cause damage or unnecessary inconvenience to plaintiff. In other words, the obligations are reciprocal, and there would seem to be no good reason for so much friction."

We have quoted thus largely from the decision and decree rendered by Judge Phelps in said suit for two reasons: first, the decision not having been appealed from, it became the law of the case and is binding upon all who were parties to that suit and their privies, which include the plaintiff, Hynd Bros. Company, as successor in interest of Kistner, the plaintiff therein, and the two defendants in this suit, in respect to said Hynd Bros. Company's rights and the limitation upon such rights to use the waters flowing in the Ewing or Rhea ditch for the irrigation of the prem-

ises which at the time of the decree were owned by said Kistner; and, second, because we believe it contains a very concise, terse and accurate statement of the law which is applicable not only to the rights of Hynd Bros. Company in its use of the Ewing or Rhea ditch and the waters flowing therein but also to the use by Krebs Brothers as the successors in interest of Mary E. Cecil in the High Line ditch and in the waters flowing therein for the irrigation of the premises which on November 10, 1902, at the time the contract was entered into, belonged to Mary E. Cecil. For this reason it was error for the learned circuit judge who tried the above suits to hold that the rights growing out of the various contracts to which we have referred were abrogated or in any way modified by the decree of the circuit court for Morrow county in the proceedings adjudicating the relative rights of the various claimants to the use of the waters of Willow creek for irrigation purposes. The contract rights of the parties who entered into said contracts were not involved in that litigation, nor were they in any way affected thereby. Under Or. L., § 5754, the decree entered in adjudication proceedings "shall in every case declare, as to the water right adjudged to each party, whether riparian or by appropriation, the extent, the priority, amount, purpose, place of use, and, as to water used for irrigation, the specific tracts of land to which it shall be appurtenant, together with such other conditions as may be necessary to define the right and its priority." The 1910 decree fixed and determined the extent of the various appropriations, their priorities, the amount of the water appropriated, the purpose for which it was appropriated and the place of use thereof, and the specific tracts of land to which such water shall be appurte-

nant. But it did not in any way determine the ownership of the High Line ditch or of the Ewing or Rhea ditch. The ownership of those ditches and the right to make use of them for the irrigation of the respective premises of the parties must be determined alone from the contracts, since there is no claim or contention that the rights of the contracting parties have been changed or modified in any manner except by the 1910 decree, which, we hold, did not in any way affect such contract rights.

The decree determines the amount of water that each party is entitled to use for the irrigation of his premises and the relative priority of such use. The contracts fix the rights of the parties in the particular ditches which were made the subject of contract between them. Each party is bound to conform to the terms of the contract entered into by him as well as to the terms of the decree. If for any reason the High Line ditch and the Ewing ditch, or either of them, cannot be used in conformity with both the terms of the decree and the terms of the contracts, then such ditch cannot be used at all. So long as said ditches are used, they must be used in conformity with the terms of the contracts as well as the terms of the decree. If hardship results therefrom, it is because of the contracts which the parties themselves entered into and which may be avoided, if desired, by mutual agreement of the parties.

The statute makes it the duty of the water master to regulate the headgates and ditches so as to prevent the waste of water or its use in excess of the volume to which the owner of any water right is lawfully entitled: Or. L., § 5707; *Squaw Creek Irr. Dist. v. Mamero*, 107 Or. 291 (214 P. 889). And any person who has been injured by the action of the water master

is, by said section, given the right to appeal to the circuit court for an injunction, but said section provides that:

"* * * Such injunction shall only be issued in case it can be shown at the hearing that the water master has failed to carry into effect the order of the board of control or decrees of the court determining the existing rights to the use of water."

It was stipulated in this case that on March 31, 1925, there was flowing upon the lands of the Krebs Brothers

"in the ditch above the house four second feet of water, in the West ditch three second feet of water, and in the High Line ditch two second feet of water which amount of water was being taken by Krebs Brothers and by them applied to crops and lands unirrigated during the said season, and which said lands were in need of artificial irrigation.

"That on March 31, 1925, practically two-thirds of the lands of plaintiff herein had been irrigated once and only about one acre of Henriksen land had been irrigated at said time.

"That of the unirrigated lands of the plaintiff at the time the water master established the said rotation system there was approximately sixty acres that were under and subject to irrigation only from the High Line ditch and then in need of artificial irrigation.

"That on said 31st day of March, 1925, over the protest and against the will of the plaintiff the water master, Aubrey E. Perry, closed the gates in said ditches and posted notices thereon and notified the Krebs Brothers to take therefrom only 4.3 second feet of water and permitted the remainder of the water being used by the said Krebs Brothers, to wit: 4.7 feet to pass on down through the said High Line ditch to the lands of the defendant Henriksen."

It was also stipulated in the Hynd Bros. Company case that:

"There was flowing in the Rhea or Ewing ditch on plaintiff's said land 1.94 second feet of water, and

in what is known as the High Line ditch, six second feet of water where the same reaches the lands of the Hynd Brothers, three second feet, of which was being taken by the plaintiff Hynd Brothers and was being by them applied to crops and lands unirrigated during said season and which was then in need of artificial irrigation, the remaining three second feet of water then in the High Line ditch flowing by Hynd Brothers and on to the lands of defendant Henriksen.

"That on March 31st, 1925, practically one-third of plaintiff's land had been irrigated and about one acre of Henriksen lands had been irrigated, and that on said 31st day of March, 1925, the water master, over the protest and against the will of the plaintiff, established a rotation system among the users of the ditches embraced in this controversy which was served on each of the parties to this proceeding on said March 31, 1925, and on April 6, 1925, and on the 11th day of April, 1925, copies of said rotation system notices being attached hereto and made a part of this stipulation.

"The said water master on March 31, 1925, turned all the water flowing in the High Line ditch on the Hynd Brothers lands and passed the same onto the lands of the defendant Henriksen, and gave all the water in the said Ewing or Rhea ditch to the said Hynd Brothers, and thereafter the water in said ditches was used by the parties to this proceeding as shown by Exhibit 5, mentioned in paragraph 25 of the further and separate answer of A. Henriksen, which is substantially a correct statement of the amount of waters allotted to the various users in said rotation schedule upon the various dates therein specified, but that the plaintiff never consented to, or acquiesced in the establishment of said rotation system by the water master, but it did use the waters that were distributed to him by the water master under said rotation system."

█ It appears from said stipulation that at the time the water master interfered with the use by Krebs Brothers of the waters flowing in the High Line ditch

and permitted a portion thereof to flow down through said ditch to the lands of Henriksen, Krebs Brothers were using, through their ditches, nine second feet of water for the irrigation of their premises, which was far in excess of the amount which they were entitled to use under the decree. It also appears that after so interfering with said use there still remained in the High Line ditch for use by Krebs Brothers for the irrigation of some sixty acres of land, irrigable under said ditch, 4.3 second feet of water, which was, so far as anything appearing in the stipulation shows, all that they could reasonably use for the irrigation of said sixty acres of land and, therefore, the action of the water master was not in violation of either the decree or of the contract rights of Krebs Brothers. It also appears from the stipulation that at the time Hynd Bros. Company was using, through the Rhea or Ewing ditch, 1.94 second feet of water and three second feet of water through the High Line ditch; which was being used by them for the irrigation of their premises, and that at the same time there was flowing down to Henriksen 3 second feet of water. There is nothing in the stipulation showing that the action taken by the water master deprived Hynd Bros. Company of any water to which it was entitled under the decree or by the terms of its contract. For that reason we are unable to find from the record wherein the water master deprived Hynd Bros. Company of any amount of water to which it was entitled.

The plaintiffs also objected to the water master establishing a rotation system between the plaintiffs and the defendant Henriksen of the waters which were being diverted by them from Willow creek at the time complained of. Under the decree it was provided that

a rotation might be established among the users of the waters of Willow creek. No appeal was taken therefrom and, hence, the rotation was authorized by the 1910 decree, establishing the amount of water to which the various parties were entitled.

There appears, therefore, no grounds upon which an injunction should have been issued in the case. For that reason we are compelled to affirm the decree although we disagree with the circuit court in its findings that the contracting parties were not bound by the terms of their contracts. Therefore, the decrees appealed from will be affirmed in each suit but without costs to either party upon the appeal, and it is so ordered.

Petition for rehearing denied November 25, 1930

ON PETITION FOR REHEARING

(293 P. 432)

RAND, J. By their petitions for rehearing, the respective appellants in the foregoing cases have called our attention to the fact that there are certain provisions in the decrees appealed from which are inconsistent with the opinion and that, therefore, the affirmance of the decrees was erroneous upon our part.

An examination of the record shows that the point is well taken. For these reasons, the order affirming the decrees will be set aside and the causes will be remanded to the court below for the entry of new decrees in accordance with the decision rendered, but without costs to any of the parties upon the appeal. In all other respects, the former opinion will be adhered to.