**DeLONG CORPORATION, a Delaware corporation, Plaintiff,**

**v.**

**The OREGON STATE HIGHWAY COMMISSION, composed of Glenn L. Jackson, Kenneth N. Fridley and David B. Simpson, in their capacity as Oregon State Highway Commissioners and Individually, Forrest Cooper and Ivan D. Merchant, Defendants.**

**Civ. No. 64-79.**

United States District Court
D. Oregon.

Aug. 24, 1964.

George W. Mead, Portland, Or., for plaintiff.

J. Robert Patterson, Chief, Trial Section, Oregon State Highway Commission, Salem, Or., for defendants.

KILKENNY, District Judge.

Under its amended complaint, the plaintiff seeks a declaration[1] of rights in connection with the provisions of a certain contract between plaintiff and the state of Oregon, acting by and through its State Highway Commission. The contract covers the construction of a massive bridge over the Columbia River between Astoria, Oregon, and Megler, Washington, which is being built through the joint efforts of the states of Oregon and Washington. Before the court is defendants' motion to dismiss on the following premises: (1) the court lacks jurisdiction over the subject matter; (2) the court lacks jurisdiction over the persons of defendants; (3) the amended complaint fails to state a claim upon which relief can be granted; and (4) failure to join indispensable parties.

Defendant Cooper is the State Engineer employed by the Highway Commission and defendant Merchant is the assistant to Cooper.

Ripe for discussion and decision at this stage are the jurisdictional questions arising under points (1), (2) and (4).

Simply stated, defendants contend that they are clothed with the immunity of the state of Oregon, and that the Eleventh Amendment to the United States Constitution does not permit the prosecution of this action.

Plaintiff counters with the claims: (1) that the court has jurisdiction under the diversity statute[2] on the theory that plaintiff is a citizen of the state of Delaware, with its principal place of business in New York; that defendants are citizens of the state of Oregon, and that the amount involved is in excess of the statutory minimum; (2) that the court has jurisdiction by reason of 28 U.S.C. § 1331 in that the agreement between Oregon and Washington authorizing construction of the bridge constitutes a compact within the meaning of Article I, Sec. 10, Clause 3 of the United States Constitution, and that no Congressional consent, as required by said clause, was

1. 28 U.S.C. § 2201.

2. 28 U.S.C. § 1332.

obtained by the states of Oregon and Washington; (3) that jurisdiction under the provisions of said section 1331 is present by reason of the requirements of the General Bridge Act of 1946,[3] under which the highway departments of the states of Oregon and Washington and the Washington Toll Bridge Authority obtained approval for the construction of said bridge from the Secretary of the Army and its chief engineer, the plaintiff asserting that the plans and specifications mentioned in the contract were incorrect and faulty, and that by reason thereof the approval of the Secretary of the Army and/or the Chief of Engineers was invalidly obtained and was, therefore, void; (4) that jurisdiction is present by reason of defendants obtaining a contribution from the United States towards the expense of the construction of the bridge in pursuance of Title 23 U.S.C.; that said payments had to be approved by the Bureau of Public Roads and that the Bureau of Public Roads will not approve further payments to plaintiff if it is established that the agreement was obtained on the basis of incorrect plans and specifications; and (5) to the extent that defendants might represent the state of Oregon and act on behalf of the state, that the state of Oregon waived immunity from suit under the Eleventh Amendment and consented that the Highway Commission be sued in this court.

■ I. For decision under the first point is whether the Oregon State Highway Commission is a citizen of the state of Oregon. In considering this subject, we must keep in mind that diversity jurisdiction, in the last analysis, presents a problem which is separate and distinct from the immunity of the state under the Eleventh Amendment. Jurisdiction exists under the diversity statute when the controversy arises between citizens of different states, not when it arises between a citizen of one state and another state. State Highway Commission of Wyoming v. Utah Construction Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262

(1929). The real party in interest, rather than the names of particular parties, is the important factor in determining whether there is diversity jurisdiction. Thus, in the case at bar, if the state of Oregon is the real party in interest, there is an absence of diversity jurisdiction even though the state may not be named. California, ex rel. McColgan v. Bruce, 129 F.2d 421, 147 A.L.R. 782 (9th Cir., 1942), cert. den. 317 U.S. 678, 63 S.Ct. 157, 87 L.Ed. 544; Weyerhaeuser Co. v. State Roads Comm'n of Maryland, 187 F.Supp. 766 (D.C.Md., 1960); Ex parte Nebraska, 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876 (1908). Therefore, the point at issue is whether this litigation amounts to anything more than an action against the state of Oregon. If it does not, jurisdiction cannot be predicated on the ground of diversity. In arriving at a proper conclusion, the court must look to the real party in interest, rather than the parties named in the pleadings. Ex parte Nebraska, supra; Missouri v. Homesteaders Life Ass'n, 90 F.2d 543 (8th Cir., 1937), cert. den. 302 U.S. 717, 58 S.Ct. 37, 82 L.Ed. 553. In making this determination, the federal courts will be influenced by state decisions, dealing with the character and status of state agencies, but ultimately the question is one which the federal courts must answer. State Highway Commission in Arkansas v. Kansas City Bridge Co., 81 F.2d 689, 691 (8th Cir., 1936); Louisiana Highway Commission v. Farnsworth, 74 F.2d 910 (5th Cir., 1935), cert. den. 294 U.S. 729, 55 S.Ct. 638, 79 L.Ed. 1259.

In order to arrive at an intelligent conclusion, the court must closely analyze, not only the legislation which created the Oregon State Highway Commission, but also legislation, subsequently enacted, touching on the powers and duties of said Commission.

Originally, the Highway Commission of the state of Oregon consisted of the Governor, the Secretary of State and the State Treasurer.[4] The chief executive officer of the Commission was the State Highway Engineer. There is little doubt

---

3. 33 U.S.C. § 525 et seq.

4. Oregon Laws 1913, Chapter 339.

but the Highway Commission, under the original Act, was a mere agent of the state, even though it had power to let contracts for the construction of roads and to exercise any and all powers in connection therewith. In 1917, under an Act which was known as the Oregon Highway Law,[5] the legislation was amended under which the Highway Commission was thereafter to consist of three members to be appointed by the Governor. In that legislation, the State Highway Commission and the State Highway Engineer and all of their employees were designated as the State Highway Department. In other words, the State Highway Commission was, and still is, a branch of the State Highway Department of the state of Oregon.[6] Of interest, and probably of significance, is the fact that the legislature in the 1917 legislation distinguished between the powers and duties of the Commission and the duties of the Highway Engineer.[7] Section 8 of that legislation required that all contracts executed for the improvement of state highways should be in the name of the State of Oregon and executed by the Commission. The power of condemnation was in the state, acting by and through the Commission, as was the right to acquire rights-of-way by donation, purchase or agreement.[8] At that time the funds of the Commission were obtained by a state levy on all property in the state equaling one-fourth mill for each dollar of taxable property within a specific county, the highway tax to be collected by the county and transmitted to the State Treasurer, the said money so collected to constitute and to be kept in a fund known as the State Highway Fund.[9] In the same year, the Oregon legislature authorized the State Highway Commission to sell general obligation bonds of the state of Oregon to raise revenue for the construction of hard surfaced highways and certain post and forest roads in the state and to use said funds in connection with the expenditure of federal funds to be provided for the same purpose.[10] By section 13 of that legislation, the Highway Commission was authorized to enter into contracts for the purpose of constructing the roads mentioned in the act. This particular legislation was referred to and adopted by the people of the state of Oregon at an election held on the 4th day of June, 1917. From time to time, over the course of the years, the legislation touching on the powers, duties and authorities of the Highway Commission was amended. However, to this date, the Highway Commission is but a part of the Highway Department of the state of Oregon. Although the delegated powers and imposed duties of the Department [11] are varied, complex and broad, it is crystal clear that the Oregon legislature never intended the Commission to be anything other than an integral part of the state government. Examples are the requirement that the Engineer, rather than the Commission, collect and compile information and statistics relative to the condition of highways and bridges, both on state and county highways, make studies to determine the best methods of road construction in the various counties and sections of the state, the establishment of a highway fund with the State Treasurer in the name of the Highway Engineer,[12] the control exercised over office hours of the Commission and the requirement that the principal office of the Commission should be in Salem [13] and the direction to the

5. Oregon Laws 1917, Chapter 237.

6. ORS 366.105.
   "The State Highway Department shall consist of the State Highway Commission, the State Highway Engineer, the Assistant State Highway Engineer, the Chief Counsel, the Secretary and all their employes or assistants."

7. Oregon Laws 1917, Chapter 237, Secs. 4, 5, 6, 7.

8. Oregon Laws 1917, Chapter 237, Sec. 9.

9. Oregon Laws 1917, Chapter 237, Sec. 12.

10. Oregon Laws 1917, Chapter 423.

11. ORS 366.155, 366.205.

12. ORS 366.155, 366.165.

13. ORS 366.170.

Commission to establish, under its jurisdiction and control, a department to be known as the State Parks and Recreation Division.[14] Although the superintendent of state parks is appointed by and holds office during the pleasure of the Commission, the Oregon legislature fixes the limit of the powers and duties imposed.[15] Not only is the Commission empowered to acquire real property by agreement, donation or the exercise of eminent domain, for the purpose of state highways and incidental functions,[16] but it is also granted the right and directed to acquire, by purchase, agreement, donation or condemnation, property for the development of state scenic and historic places [17] and to make regulations and provisions for the use and administration of all such places, together with regulations in parks and recreational areas.[18] The legislature made provision for the establishment and operation of arboretum and botanical gardens under the State Parks Division of the Commission and to accept funds from any source for the establishment of such gardens, the funds so received to be immediately paid into the General Fund in the State Treasury and designated as the Arboretum Botanical Garden Account.[19] Of great importance, and, in my judgment, a deciding factor on whether the Commission is a mere agent of the state, or is a separate entity or citizen within the meaning of the diversity statute, is the language of the statute permitting the Commission to institute eminent domain proceedings.[20] This legislation requires that the suit or action in a condemnation proceeding must be prosecuted for the state *in the name of the state, by and through the Commission.* Likewise, of immense significance is the fact that the Oregon legislature required that all contracts executed by the Commission be made *in the name of the State, by and through the Commission.*[21] All claims approved by the Commission are required to be filed with the Secretary of State of the state of Oregon, who is under a statutory duty to audit the claims, and if found satisfactory, to pay them out of the State Highway Fund. State Highway funds are derived from many sources, including, but not limited to, bonds issued in the name of the State by the Highway Commission, revenue from motor vehicle licenses, gasoline taxes, federal highway funds, and gifts. All funds must be deposited with the State Treasurer, who is directed to keep a separate Highway Fund.[22] Each enactment authorizing the issuance of bonds, from its inception in 1917, has provided that such bonds are general obligations of the state of Oregon.

Plaintiff in advancing its argument that the Highway Commission is a citizen, separate and distinct from the state of Oregon, relies on a number of Turnpike cases, including, but not limited to, Hunkin-Conkey Construction Co. v. Pennsylvania Turnpike Commission, 34 F. Supp. 26 (M.D.Pa., 1940), where the Turnpike Commission was authorized to contract, acquire property and issue bonds in its own name, the revenue bonds being payable exclusively from the tolls to be collected from the turnpike, the bonds creating no obligations for payment on the part of the state of Pennsylvania. Furthermore, the legislation specifically authorized the turnpike to sue and be sued in its own name; Kansas Turnpike Authority v. Abramson, 275 F.2d 711 (10th Cir., 1960), where the legislation creating the Authority authorized it to issue revenue bonds payable solely from the revenues of the project, and specifically authorized the Authority to sue and be sued in its own name. It was not under the supervision of the state or any other

14. ORS 366.180.

15. ORS 366.182.

16. ORS 366.340.

17. ORS 366.345.

18. ORS 366.350.

19. ORS 366.355.

20. ORS 366.375.

21. ORS 366.400.

22. ORS 366.510.

agency thereof; Guaranty Trust Co. of New York v. West Virginia Turnpike Comm'n, 109 F.Supp. 286 (S.D.W.Va. 1952), where the Turnpike Commission had no power to incur liability on behalf of the state, was not authorized to use any funds of the state and entered into contracts in its own name; Harrison Construction Co. v. Ohio Turnpike Comm'n, 272 F.2d 337 (6th Cir., 1959), where the court emphasizes the importance of the Ohio legislation permitting the Turnpike to sue and be sued in its own name, to issue revenue bonds, to take, hold and dispose of real and personal property (all public lands acquired, by condemnation or purchase, to be in the name of the state); to make and enter into all contracts and agreements necessary or incidental to its purposes, with the provision that the Commission should make adequate compensation to the state for the use of all state lands, and the authorization to issue revenue bonds, with the principal and interest on such bonds to be paid solely from the revenue received from the operation of the Turnpike; Louisiana Highway Comm'n v. Farnsworth, supra, where the legislation creating the highway commission provided that the commission might sue and be sued in its own name. Otherwise, the powers and duties of the highway commission in that case are quite similar to the powers and duties of the highway commission in the instant case. The decision of the Fifth Circuit turns on the opinion of the Louisiana Supreme Court in Saint v. Allen, 172 La. 350, 134 So. 246, which involved the right of the Louisiana Highway Commission to employ attorneys to represent it without securing the consent or approval of the Attorney General of the state. The Louisiana Supreme Court held that the highway commission was a legal entity separate and distinct from the state and that it could employ its own attorneys. Obviously, this was an interdepartmental squabble between the Attorney General and the Highway Commission and I personally doubt if the decision should carry the weight given

to it by the Court of Appeals of the Fifth Circuit in the Farnsworth case. It is my judgment that if the Louisiana Supreme Court was faced with the factual background of this case, it would hold that its highway commission, although an agent of the state, was clothed with the immunity of the Eleventh Amendment and that the commission was not a citizen within the meaning of the diversity statute. The author of the opinion in Farnsworth indicates that he would have followed the decision in State Highway Comm'n of Wyoming v. Utah Construction Co., supra, if the Louisiana court had not already decided that the commission was an entity separate and distinct from the state. An analysis of Gerr v. Emrick, 283 F.2d 293 (3rd Cir., 1960), would add nothing to my discussion and analysis of the power of the Pennsylvania Turnpike Authority in Hunkin-Conkey Construction Co., supra. The Pennsylvania legislation creating the turnpike authority bears little resemblance to the Oregon legislation creating the highway commission. The substance of the decision in Gerr is that the state court decided that the Turnpike Commission was an entity separate and distinct from the state and was, therefore, a citizen of the state for the purposes of diversity of citizenship. The statutory powers of the commission have already been discussed in Hunkin-Conkey Construction Co., supra.

Aside from Farnsworth, all of the authorities concerned with a state highway commission, where the point has been directly presented, hold that such a commission with powers and duties comparable to those of the defendant is an agency or branch of the state, and is not a citizen within the meaning of the diversity statute. For example, State Highway Comm'n of Wyoming v. Utah Construction Co., supra; State Highway Comm'n in Arkansas v. Kansas City Bridge Co., 81 F.2d 689 (8th Cir., 1936); Simmons v. South Carolina State Highway Department, 195 F.Supp. 516 (E.D. S.C.1961); Stamey v. State Highway Comm'n of Kansas, 76 F.Supp. 946 (D.

Kan., 1948); and Dunnuck v. Kansas State Highway Comm'n, 21 F.Supp. 882 (D.Kan., 1937). In the Simmons and Stamey cases jurisdiction was based on the alleged presence of a federal question and the powers and duties of the commissions were not disclosed. The same can be said of the Dunnuck case. However, the core of the decision in each of those cases was that the highway commission was the means by which the state performed one of its most important governmental functions, i. e., the construction and maintenance of a state system of highways. In each of these cases, the court held that the Eleventh Amendment barred an action against the highway commission, as an agency of the state.

The most learned discussion of the problem I have found is in Weyerhaeuser Co. v. State Roads Comm'n of Maryland, 187 F.Supp. 766 (D.Md., 1960), where Judge Thomsen undertook to analyze all of the decisions previously made by federal courts on the particular problem, and recognized the existing confusion in the authorities in failing to distinguish between jurisdiction under the diversity statute and a claim of immunity under the Eleventh Amendment. He emphasized the fact that in some instances the states created new and separate state agencies to construct and operate special projects, such as turnpikes and bridges, while in other instances new powers and duties have been lodged in existing agencies. In his study of the decisions, he found that where a new separate agency had been created, the decisions were not uniform as to whether the agency was a citizen under the diversity statute; where the corporation had been created to operate a specific project, it was generally held to be a citizen within the meaning of the statute and where the state had simply granted additional powers and duties to an existing agency, such as a highway commission, the agency did not gain the status of independent citizenship. It was there held that the court did not have diversity jurisdiction. In league with the authorities hold-

ing that a commission or agency of a state having similar, if not identical, powers and duties of the defendant, commission, is not a citizen, is Fowler v. California Toll-Bridge Authority, 128 F. 2d 549 (9th Cir., 1942). There, the bridge authority bonds were payable solely from the tolls of the bridge and were paid into the State Treasury and credited to a special fund. The Court of Appeals distinguished this case from the Pennsylvania Turnpike Authority cases on the premise that the latter had power to take title to property and had other powers not existent in the California agency. The more recent Ninth Circuit case of Lowe v. Manhattan Beach School District of Los Angeles County, 222 F.2d 258 (9th Cir., 1955) adds to the prestige of the Fowler case, by holding that a school district is not a citizen within the diversity statute and is part of the state government.

Finally, I turn to a review of the Oregon cases which may be of assistance in finding a solution.

Although plaintiff cites and relies on Tomasek v. Oregon State Highway Comm'n, 196 Or. 120, 248 P.2d 703 (1952), I can find nothing in that decision which is in any way helpful to plaintiff. True enough, the court held that the immunity created by the constitution of the state of Oregon did not bar that particular action. The waiver, however, was by reason of the peculiar provisions of the state constitution as they applied to that particular action. There, of course, the court was not speaking of immunity under the Eleventh Amendment. For that matter, it would appear that the decision favors the viewpoint of defendants, rather than that of plaintiff. It is there emphasized that no valid distinction can be drawn between state highway departments and other political subdivisions of the state and that they all derive their immunity from the same source, i. e., the state, and being agencies of the state they are, in effect, the state itself. It is clear that the Oregon court permitted the action to proceed against the Highway Commission, not on the the-

ory that the Commission was an entity separate, distinct and apart from the state, but on the theory that the Highway Commission was an integral part of the state and that the constitutional provision which impliedly waived immunity on the part of the state, would also be applicable to the Commission.

Morrison v. State Highway Comm'n, 225 Or. 178, 357 P.2d 389, 85 A.L.R.2d 203 (1960), cited by defendants, is of little importance. It merely demonstrates the common practice of instituting an action against the *state of Oregon,* through its State Highway Commission.

The theory that the Highway Commission and its members are clothed with the immunity of the state of Oregon was advanced in Lucas v. Banfield, 180 Or. 437, 177 P.2d 244 (1947). The lower court dismissed the action against the state of Oregon, by and through its Highway Commission, consisting of the named members, on the ground that the state of Oregon could not be sued without its consent. The language of the Oregon Supreme Court clearly recognizes that a suit against the Highway Commission, and its members, is to be viewed as a suit against the state.[23]

Persuasive in a study of the status of the commission is United Contracting Co. v. Duby, 134 Or. 1, 292 P. 309 (1930), where the plaintiffs insisted that the sovereign's immunity was not available to an agency of the state in a suit against the agency predicated upon its failure to perform a duty exacted by a public statute or by a contract executed by the state and the plaintiff. The court held that the absence of the state's name from the named defendants was not conclusive evidence that immunity was unavailable. (State Highway Comm'n v. Utah Construction Co., supra, is cited with approval in Duby, at page 21 and page 25 of 134 Or., 292 P. 309). In speaking of the Highway Commission contract, the court stated that it was the property of the state and that the state was vitally

concerned with its interpretation and the performance of its obligations. It was there emphasized that the funds out of which the plaintiff sought payment belonged to the state and were in the possession of its treasurer. On the point before me, Duby held that the judgment would necessarily be collected from the state treasury; that the state was a necessary party defendant and that if the state was actually before it in the personage of the highway commission, it was evident that the suit could not be maintained because of the immunity claimed on behalf of the state.

The Highway Commission is a state board of *special and limited powers.* State ex rel. Hagquist v. United States F. & G. Co., 125 Or. 13, 265 P. 775 (1928). Other Oregon cases, such as Butterfield v. State Industrial Accident Comm'n, 111 Or. 149, 223 P. 941, 226 P. 216 (1924); Mohler v. Fish Comm'n, 129 Or. 302, 276 P. 691 (1929) and Pacific Fruit & Produce Co. v. Oregon Liquor Control Comm'n, 41 F.Supp. 175 (D.Or., 1941) touch on the powers and operations of state agencies, other than the Highway Commission. Not to be minimized, however, is the analysis of the subject by Judge Fee, in Pacific Fruit & Produce Co. v. Oregon Liquor Control Comm'n, supra. Judge Fee cites United Contracting Co. v. Duby, supra, in support of his conclusion that the Liquor Control Commission should be differentiated from other agencies, giving as an example the power and control of the State Industrial Accident Commission over its funds, as distinguished from *the limited power of the State Highway Commission over the funds deposited in the State Treasury.* From a thorough study of all the authorities on the subject, I can arrive at no conclusion other than that the Oregon State Highway Commission is nothing more than an arm of the state, performing an essential governmental function, rather than an entity, separate and apart from the state, which might be viewed as

23. 180 Or. 441, 177 P.2d 245.
"It is clear that a declaratory judgment proceeding must be dismissed when

relief is sought against the State and when it has not consented to be sued."

a citizen within the meaning of the diversity statute.

I(a). As an alternative, the plaintiff argues that by the legislation authorizing the construction of interstate bridges, the Oregon legislature intended to create an autonomous, separate entity or corporation in the nature of an interstate bridge authority, similar to those entities created by other states and known as Turnpike Authorities. This contention is completely unsound. The title to the Act [24] authorizing the Oregon State Highway Commission to construct, operate and maintain a bridge or bridges over the Columbia river to the state of Washington demonstrates, beyond argument, that the state legislature intended the Highway Commission, as then constituted, to proceed with the construction of such bridges and finance the same all in the *name of the state of Oregon*. The legislation authorized the Commission, in the name of the state, to enter into contracts for the construction, purchase, maintenance, operation, repair, reconstruction and improvement of an interstate bridge, such as the one here in question, and to pay the cost of such out of state highway funds or *any other available funds* with the proviso that in the event the bridge operated as a toll bridge, the share of toll revenues accruing to the *state of Oregon* should be applied by the Highway Commission to reimburse the highway funds for expenditures made in connection with the bridge. A further provision required that all contracts be made in the name of the state of Oregon.[25] Each contract with the Government of the United States, or any of its agencies, or with the state of Washington, was required to be made in the name of the state of Oregon.[26] The main thrust of the plaintiff's argument is that ORS 381.025 provides that the construction, purchase, or acquisition of an interstate bridge may be financed in whole, or in part, by loans obtained from the United States Government, or any of its agencies, or from any other source and that as security for the payment of such loans, the revenue of the bridge, over and above the cost of maintenance and operation, might be hypothecated or pledged, *but that no such hypothecation or pledge of revenue should constitute a general obligation of the state*. Plaintiff relies on cases such as Kansas Turnpike Authority v. Abramson, supra. The distinction to be recognized is that under the Oregon legislation, the bridges might be financed through a pledge of the revenues or through general obligation bonds of the state, while the turnpike authorities were authorized to issue bonds solely on the strength of the toll revenues. Additionally, in practically all cases, the turnpike authorities were autonomous entities entirely separate and apart from the state, empowered to make contracts and to proceed in their own names rather than in the name of the state. It is my belief that the 1941 legislation did not change the nature or character of the Oregon State Highway Commission. It remains an agency of the state government and is not a citizen within the meaning of the diversity statute. An action against the State Highway Commission, its members and officers, amounts to nothing

---

24. Laws of Oregon, 1941, Chapter 202, now ORS 381.005 et seq.

"AN ACT

"To authorize and empower the Oregon state highway commission *in the name of the state of Oregon* to construct, reconstruct, purchase, rent, lease or otherwise acquire, improve, operate and maintain a bridge or bridges over the Columbia river to the state of Washington, and to enter into all necessary contracts or agreements therefor with the United States or any of its agencies, the state of Washington or any of its political sub-divisions, or any of its agents, any of the political subdivisions of the state of Oregon, and any person, individual, association, corporation, domestic or foreign; to establish free or toll bridges, to pledge the same and the revenues thereof for financial loans, providing for acceptance of donations or gifts of land, money or other valuable things, and providing for the exercise of the power of eminent domain."

25. ORS 381.055 and ORS 381.090.

26. ORS 381.010.

more than an action against the state of Oregon; Morrison v. State Highway Comm'n, supra; Lucas v. Banfield, supra; State Highway Comm'n of Wyoming v. Utah Construction Co., supra; State Highway Comm'n in Arkansas v. Kansas City Bridge Co., supra. An action, such as this, where the nominal defendants are individual state officers, where the relief sought amounts to a construction or enforcement of a contract with the state, is in effect a suit against the state. Of course, the individual defendants cannot be held liable for a breach of the state's contract, since they are not parties to the instrument. In Re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887); Schrader v. Veatch, 216 Or. 105, 337 P.2d 814 (1959). In other words, the state of Oregon is the real party in interest. Such being the case, the argument on whether the State Highway Commission can be sued in its own name is of no significance. Any judgment obtained against it would, in fact, and in law, be a judgment against the state of Oregon.

## SECTION 1331 JURISDICTION

As an alternative, plaintiff suggests federal jurisdiction on a theory that the allegations of the amended complaint require an interpretation of the Constitution and laws of the United States.[27] These theories are outlined in brief under defendants' points (1), (2) and (3), previously mentioned. The plaintiff fails to recognize that the existence of a controversy which arises under federal law does not, in and of itself, divest a state of its immunity under the Eleventh Amendment. This principle is established and clearly stated in Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1899) and Ex parte New York, 256 U.S. 490, 41 S.Ct. 588, 65 L. Ed. 1057 (1921). Otherwise stated, it is a fundamental rule that the judicial power granted by the Constitution does not embrace the authority to entertain a suit brought against a state, without its consent. Duhne v. State of New Jersey, 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920); Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900). The recent case of Parden v. Terminal Ry., 377 U.S. 184, 84 S.Ct. 1207 (1964), recognizes this rule, but avoids its effect by holding that the state of Alabama had, under the facts in that case, waived its immunity under the Eleventh Amendment. It is on this theory of waiver that plaintiff makes its final stand in defense of the jurisdiction of this court.

## WAIVER

Relying on Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), plaintiff urges that Oregon waived its immunity under the Eleventh Amendment when it entered into the bridge construction compact with the state of Washington. Without doubt, Oregon took advantage of the implied Congressional approval which is inherent in the General Bridge Act, 33 U.S.C. § 525 (1946). The Petty case involved federal legislation commonly known as the Jones Act. There, the United States Supreme Court held that Missouri and Tennessee had waived their immunity by acting under an interstate compact which had been presented to Congress and expressly approved by it. The Bridge Commission in the Petty case was created by legislation enacted by the state of Missouri and the state of Tennessee, acting pursuant to the compact clause of the Constitution. A compact was prepared by the two states and submitted to Congress. The compact provided that the Commission should have power to build a bridge and operate ferries across the Mississippi at specified points and that it should have power to contract and to "sue and be sued" in its own name. Congress granted its consent to the compact and attached a significant proviso with reference to jurisdiction.[28] The court held that the

---

27. 28 U.S.C. § 1331.

28. "[N]othing herein contained shall be construed to affect, impair, or diminish any right, power, or jurisdiction of * * * any court * * * of the United States * * *." 359 U.S. at 281, 79 S.Ct. at 789.

proviso, when read in the light of the "sue and be sued clause" of the compact, reserved jurisdiction in the federal courts to act in any matter arising under the compact and that the states, by approving the compact, thus waived immunity under the Eleventh Amendment. Here, there is no express Congressional approval of the compact, nor does it contain a "sue or be sued clause". Obviously, we are not here concerned with a Congressional proviso on jurisdiction. The decision in Petty is sound, but it does not serve as authority in support of plaintiff's contention.

Upon the principles stated in Parden v. Terminal Ry., supra, decided since this case was argued and the original briefs submitted, plaintiff argues that Oregon waived its immunity under the Eleventh Amendment by engaging in the construction of a bridge to be operated in interstate commerce. There is language in the opinion which may lend support to plaintiff's contention.[29] Be that as it may, I remain of the belief that the decision, as all others, must be read in the light of the facts involved. There, the state of Alabama purchased and commenced operating a railroad some twenty years after the enactment of the Federal Employers' Liability Act. The railroad was engaged in interstate commerce. Only two questions were presented, neither of which is involved in the solution of the problem before me.[30] The court went on to say that in making FELA applicable to "every" common carrier, the Congress necessarily included a common carrier owned and operated by a state. In the pertinent part of its opinion, the court stated that Alabama had waived its immunity when it commenced the operation of the railroad some years after the enactment of FELA.[31] That the Court did not intend to weaken, in any way, the immunity granted to a state by the Eleventh Amendment, is emphasized by the language of the opinion as set forth in the footnote.[32]

Although the trend may seem to be in the opposite direction, I should pay heed to the recurring admonishment of the courts to keep the federal system within its own sphere of delegated authority and pay full homage to the sanctity of the constitutional guarantees in favor of the respective states. From childhood we are taught the value of the virtue of restraint. This virtue is as wholesome when employed by the courts, as it is when exercised by individuals.

The fact that the state of Oregon, by signing the agreement with the United States, will receive federal funds in aid of the construction of the bridge and that the whole project is subject to the provisions of Title 23 U.S.C. does not, in my opinion, constitute a waiver

29. "A State's immunity from suit by an individual without its consent has been fully recognized by the Eleventh Amendment and by subsequent decisions of this Court. But when a State leaves the sphere that is exclusively its own and enters into activities subject to congressional regulation, it subjects itself to that regulation as fully as if it were a private person or corporation." 377 U.S., at 196, 84 S.Ct., at 1215.

30. "Here, for the first time in this Court, a State's claim of immunity against suit by an individual meets a suit brought upon a cause of action *expressly created by Congress*. Two questions are thus presented: (1) Did Congress in enacting the FELA intend to subject a State to a suit in these circumstances? (2) Did it have the power to do so, as against the State's claim of immunity?"

377 U.S., at 187, 84 S.Ct., at 1210. (Emphasis supplied).

31. "Our conclusion is simply that Alabama, when it began operation of an interstate railroad approximately 20 years after enactment of the FELA, necessarily consented to such suit as was authorized by that Act." 377 U.S., at 192, 84 S.Ct., at 1213.

32. "Recognition of the congressional power to render a State suable under the FELA does not mean that the immunity doctrine, as embodied in the Eleventh Amendment with respect to citizens of other States and as extended to the State's own citizen by the Hans case, is here being overridden. *It remains the law that a State may not be sued by an individual without its consent.*" 377 U.S., at 192, 84 S.Ct., at 1213. (Emphasis supplied).

of the state's immunity under the Eleventh Amendment.

The time tested rule that a waiver of sovereign immunity will be found only where stated in the most express language, or where presented by such overwhelming implication from the text so as to leave no room for any other reasonable construction, as taught in Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909), and Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 468–470, 65 S.Ct. 347, 89 L.Ed. 389 (1945), is particularly applicable to the facts in this case. Furthermore, the heavy burden on the plaintiff to show an "intentional relinquishment or abandonment of a known right or privilege," the doctrine stated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), has not been met. Under the circumstances of this case, waiver is a federal question.

Also, without merit, is plaintiff's contention that the state of Oregon consented to be sued by reason of the provisions of ORS 30.320.[33] Manifestly, the statute contemplates that the state of Oregon be named as a defendant. Here, the plaintiff has deliberately avoided such a step. No doubt, for fear that the state is immune under the Eleventh Amendment. In any event, I feel that this statute waives only the common law immunity of the sovereign to be sued in its own courts and was never intended to waive the state's immunity under the Eleventh Amendment. The common law immunity is ably discussed by Justice Perry in Schrader v. Veatch, 216 Or. 105, 107, 337 P.2d 814 (1959).

In the absence of jurisdiction, the court has no alternative other than to allow defendants' motion.

---

33. ORS 30.320

"*Actions and suits against governmental units.* A suit or action may be maintained against any county and against the State of Oregon by and through and in the name of the appropriate state agency upon a contract made by the county in its corporate character, or made by such agency and within the scope of its authority, and not otherwise; provided, however, that no suit or action may be maintained against any county or the State of Oregon upon a contract relating to the care and maintenance of an inmate or patient of any county or state institution. An action or suit may be maintained against any other public corporation mentioned in ORS 30.310 in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such other public corporation."