William David **POTTER**, Plaintiff-Appellant,

v.

Tom **McCALL**, Governor of the State of Oregon, et al., Defendants-Appellees.

No. 24496.

United States Court of Appeals, Ninth Circuit.

Nov. 4, 1970.

---

20. See reference to United States Bio-Genics Corp. v. Christenberry, n. 14.

William David Potter, in pro. per.

Lee Johnson, Atty. Gen., David H. Blunt, Asst. Atty. Gen., Rhoten, Rhoten & Speerstra, Salem, Or., for defendants-appellees.

Before WRIGHT and KILKENNY, Circuit Judges, and TAYLOR,* District Judge.

PER CURIAM:

Appellant, a prisoner at the Oregon State Penitentiary, brought a civil action for damages against the governor of Oregon and other public officials, alleging a violation of his civil rights. He invoked the jurisdiction of the District Court under 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

The complaint alleged that the defendants, officers and employees of the state, transferred him from the penitentiary to the Oregon State Hospital for treatment. He alleges that he was not informed of the risks of the treatment, that he was required to undergo it without a hearing, and that he suffered a permanent physical disability as a result. The defendants' motion to dismiss was on the ground that the complaint does not state a claim on which the court can grant relief.

 The District Court did not follow the proper procedure as outlined in our prior decisions. Dodd v. Spokane County, 393 F.2d 330 (9th Cir. 1969), Armstrong v. Rushing, 352 F.2d 836 (9th Cir. 1965), and Harmon v. Superior Court, 307 F.2d 796 (9th Cir. 1962). When a plaintiff in a civil rights suit is confined in a state prison at the time of a hearing, he has no right to appear personally. He is, however, entitled to have:

(1) process issued and served;

(2) notice of any motion thereafter made by defendant or the court to dismiss the complaint and the grounds therefor;

(3) an opportunity to at least submit a written memorandum in opposition to such motion;

(4) in the event of dismissal, a statement of the grounds therefor; and

(5) an opportunity to amend the complaint to overcome the deficiency unless it clearly appears from the complaint that the deficiency cannot be overcome by amendment. Armstrong v. Rushing, supra, at 837.

Here there was no compliance with requirements (3), (4), or (5).

We said, through Judge Duniway, in Harmon v. Superior Court, supra:

"The claim may be, as appellees assert, entirely spurious. The complaint may well not state a claim upon which relief can be granted. It may be that appellant cannot amend to state such a claim. But those are not the questions before us. The court cannot know, without hearing the parties, whether it may be possible for appellant to state a claim entitling him to relief, however strongly it may incline to the belief

* Hon. Fred M. Taylor, United States District Judge, District of Idaho, sitting by designation.

that he cannot. * * * The right to a hearing on the merits of a claim over which the court has jurisdiction is of the essence of our judicial system, and the judge's feeling that the case is probably frivolous does not justify by-passing that right. Appellant is entitled to have process issued and served, and to be heard." [1]

Reversed and remanded.

KILKENNY, Circuit Judge (dissenting):

The record reveals that appellant's complaint was duly served upon the appellees. They promptly appeared and on May 23, 1969, filed a motion to dismiss on the ground that the complaint did not state a claim upon which relief could be granted. Included in appellees' motion was a memorandum of authorities. The motion to dismiss was served upon appellant by mail on the same day. Inasmuch as the copy of the motion was deposited in the Post Office in Salem and appellant's residence was in the same city, it is presumed that he received the copy of the motion the following day.

Rule 7(b) of the Rules of the United States District Court for the District of Oregon provides:

"(b) *Motion Calendar.* All motions and interlocutory pleadings raising a question of law only will be heard, unless the Court otherwise directs, on the second Monday after such pleading is filed."

Under this rule, the motion for dismissal was placed on the calendar for hearing on Monday, June 2, 1969. On that day, the motion to dismiss was before the court for hearing. Appellees' attorneys appeared ready to argue the motion. The district judge asked if the appellant was present. On ascertaining that the appellant was not present, the judge stated that he had read the authorities cited by appellees in their memorandum and allowed the motion to dismiss.

It is my view that the appellant, the same as any other litigant, is bound by this rule of court. To create an exception in his favor is nothing short of judicial legislation which will create outright chaos at the trial court level. We should not place upon the trial judge the burden of examining the file in each case, guessing whether a *pro se* plaintiff is incarcerated and, if so, inviting him to file an argument in support of his pleading. Nothing in the FRCivP require any such procedure.

Rule 12(b), FRCivP, authorizes the district court to dismiss the complaint for failure to state a claim. Simply stated, the appellant's complaint does not state a claim upon which relief can be granted. He attempts to state a claim under the Civil Rights Act, 42 U.S.C. § 1981, et seq. and 28 U.S.C. § 1343. Most of the statements in the complaint are conclusionary.

While it is true that the denial or deprivation of essential medical care may be actionable under the Civil Rights Act, Stiltner v. Rhay, 371 F.2d 420, 421 (9th Cir. 1967), Footnote 3, cert. denied 389 U.S. 964, 88 S.Ct. 352, 19 L.Ed.2d 378 (1967), it is not ordinarily the function of the federal courts to interfere with the conduct of state officials in carrying out their duties of determining the nature and character of medical treatment for state prisoners. United States ex rel. Lawrence v. Ragen, 323 F.2d 410 (7th Cir. 1963). The state officials have a wide discretion as to the nature and extent of the medical treatment to be given to prisoners. Snow v. Gladden, 338 F.2d 999 (9th Cir. 1964); Mayfield v. Craven, 299 F.Supp. 1111 (E.D.Cal.1969).

As to the individual members of the Board of Control, the complaint charges that they were acting in their official capacity. The same is true as to the other defendants. In these circumstances, the individual defendants were participating in a governmental function which re-

---

1. *Cf.* Worley v. California Department of Corrections et al., 432 F.2d 769, decided October 19, 1970, in which we held that no claim was stated and the complaint was so clearly defective that its deficiencies could not be overcome by amendment.

quired the exercise of discretion. In the exercise of this discretion, they are immune from damage actions under the Civil Rights Act. Allison v. California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1969); Silver v. Dickson, 403 F.2d 642, 643 (9th Cir. 1968), cert. denied 394 U.S. 990, 89 S.Ct. 1477, 22 L.Ed.2d 765. I am unable to differentiate between the functions and duties of the Oregon State Board of Control and those of the California Adult Authority insofar as they may relate to the discretionary powers of the respective boards and immunity under the Civil Rights Act. Here, as distinguished from Allison v. California Adult Authority, *supra,* there is no charge that defendants individually, or as a group, personally assaulted or abused the appellant. To the contrary, appellant alleges, as just noted, that they acted in their official capacity.[1]

While Rule 15, FRCivP, gives a party a right to once amend his pleading as a matter of course, there is nothing in the record to indicate that the district court would not have permitted an amendment if appellant so desired. For that matter, there is nothing to indicate that appellant had anything new to add to his complaint, even as late as final submission on appeal. In these circumstances, an error, if any, in dismissing the complaint without affording the privilege of amending under Rule 15 should be viewed as harmless under the dictates of Rule 61, FRCivP.[1a]

Furthermore, I believe that Dodd v. Spokane County, 393 F.2d 330 (9th Cir. 1968); Armstrong v. Rushing, 352 F.2d 836 (9th Cir. 1965); and Harmon v. Superior Court, 307 F.2d 796 (9th Cir. 1962), the cases relied upon by the majority, are factually distinguishable and, therefore, not controlling here. In analyzing those decisions, I find that each case was dismissed by the court *sua sponte* without the issuance of process and without an opportunity for the plaintiff to respond to a motion to dismiss. Moreover, in each case, the complaint stated a claim on which relief could be granted. On the record before us, however, process was served, appellant was mailed a copy of the motion to dismiss and given nine days in which to respond to appellees' memorandum before the cause came on for hearing, and no actionable claim was, in fact, stated in the complaint.

Aside from the above, I am deeply concerned over an Eleventh Amendment problem. Appellant attempts to hold liable the members of the Board of Control in their official state capacity.

Clearly, appellant is attempting to sue Tom McCall, as Governor of the state of Oregon, Clay Myers, as Secretary of State of the state of Oregon and Robert Straub, as State Treasurer of the same state. The State Board of Control was established by Chapter 78, § 35 of General Laws of Oregon, 1913.[2] At the time of the institution and dismissal of this action in district court, the section read:

*"Oregon State Board of Control; members; compensation.* There is established the Oregon State Board of Control. The board shall consist of

---

1. "That the Defendants, *acting in their official capacity as state functionaries pursuant to statutes of the State of Oregon,* by duly promulgated general orders, regulations, customs and usage, caused Plaintiff to be transferred from the Oregon State Penitentiary to the Oregon State Hospital solely for the purpose of subjecting him to electric shock and insulin therapy, and as a result Plaintiff suffered severe facial paralysis; * * * *" (Record, p. 4).

1a. Although the rule was promulgated for the guidance of the district court, the rule should be heeded by the court of appeals in order to make it effective. Gillis v. Keystone Mutual Casualty Co., 172 F.2d 826 (6th Cir. 1949), cert. denied 338 U.S. 822, 70 S.Ct. 67, 94 L.Ed. 499; Blum v. Cottrell, 276 F.2d 689 (4th Cir. 1960). 28 U.S.C. § 2111 and the rule should be construed together. Blum v. Cottrell, *supra.*

2. The Board was abolished by Chapter 199, General Laws of Oregon, 1969, effective July 1, 1969.

the Governor, who is ex officio chairman, the Secretary of State and the State Treasurer. No member of the board shall receive any salary, fee or other compensation for services rendered as a member of the board; but each member shall receive all necessary traveling expenses when traveling on tours of inspection of the institutions." O.R.S. 179.020.

The broad powers of the Board were outlined in O.R.S. 179.040.[3] Manifestly, the Board is not an entity separate and apart from the state, but is an arm of the state performing essential governmental functions. Here, as in DeLong Corp. v. Oregon State Highway Com'n, 343 F.2d 911 (9th Cir. 1965) affirming 233 F.Supp. 7 (D.Or.1964), cert. denied 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965), the state of Oregon is the real party in interest and under the Eleventh Amendment to the United States Constitution is immune from suit in federal court. Beyond that, the members of the Board acting in their official capacity, as charged in the complaint, are clothed with the same immunity as the Board. DeLong Corp. v. Oregon State Highway Com'n, *supra;* Silver v. Dickson, *supra.*

Appellant argues that the district court should have provided him with the services of an attorney. He made no such request at the district court level. He cannot now raise the point.

I would affirm.

3. *"General Powers and duties of board.*
 (1) The board shall:
 (a) Have an official seal which shall bear the name of the board.
 (b) Govern, manage and administer the affairs of the public institutions, buildings and works that may, from time to time, be created by law and come within the jurisdiction of the board.
 (c) Enter into contracts for the erection, completion and furnishings of all new buildings or additions at the institutions.
 (d) Subject to any applicable provisions of ORS 279.710 to 279.746 and 291.652 to 291.726, enter into contracts for the purchase of supplies for the institutions, as well as for fuel, heat, light, water, telephone, equipment, repairs, improvements and betterments.
 (e) Make and adopt bylaws, not inconsistent with law, for the guidance of the board and for the government of the institutions.
 (2) The Board may:
 (a) Condemn land and right of ways for water pipes, sewers, telegraph, telephone and transmission lines.
 (b) Sue and plead in all courts of law and equity.
 (c) Perform all legal and peaceful acts requisite and necessary for the successful management and maintenance of the institutions."
 (O.R.S. 179.040).