**Harry FRANKLIN, Plaintiff,**

v.

**STATE OF OREGON, and State Welfare Division, Defendants.**

**Civ. No. 79–634.**

United States District Court, D. Oregon.

May 25, 1983.

Graham M. Hicks, Miller, Nash, Yerke, Wiener & Hager, Portland, Or., for defendants Hayes, Billings, and Mekkers.

Harry Franklin, plaintiff pro se.

Dave Frohnmayer, Atty. Gen., Scott McAlister, Asst. Atty. Gen., Salem, Or., for defendant State of Or.

Daryl S. Garrettson, Yamhill County Counsel, McMinnville, Or., for defendant Yamhill County.

### OPINION and ORDER

JAMES M. BURNS, Chief Judge:

This is another chapter in the Harry Franklin saga. No longer am I tempted to call it the final chapter, as desirable as that would be to me. I mention mournfully that only the finality of death—his or mine—would enable the other of us to use the term "final" in that way. And, of course, if mine comes first, I have no doubt that another judge will someday express lamentations such as these. They will be packaged and labelled, by reason of tradition, as opinions.

Some history is needed at this point.

In 1978, Franklin was convicted of burglary and assault in the Yamhill County, Oregon Circuit Court. He was sentenced to concurrent eleven and five year terms in the Oregon State Penitentiary (OSP). All of this has seemed no small injustice to Franklin. As a consequence, he has taken it upon himself to bedevil his keepers and, indirectly, this court. Cf. Green v. Camper, 477 F.Supp. 758, 759 (W.D.Mo.1979) ("Petitioner is of the apparent mind that by flooding the Court with litigation and rendering it unable to administer its docket because of the sheer volume of such frivolous and malicious filings he will cause the Court to order his release from custody."). True to his calling,[1] Franklin has filed a

---

1. "The Lord spoke to me, and he told me to file these lawsuits and said, 'You will win big in your lawsuits,'" the heavy-set, white haired convict said. "He showed me an enormous gray elephant. He said that the elephant represents the big, gray courts, which is the government.

"Anyway, I was leading this elephant through every section of this penitentiary," he said. "I was writing on a yellow legal pad. Each place we came to I'd jot something down and slap the sheet onto the elephant. And they all stuck. The Lord told

civil rights complaint in this court every time somebody does something he does not like. By late spring 1980 Franklin had filed thirty-seven separate cases in this court, paying the requisite fees.[2] On May 29, 1980, I dismissed thirty-three of these cases on my own motion before Franklin had served summonses. Franklin appealed. During the pendency of the appeal, I dismissed four more of his remaining cases. Undaunted, Franklin tendered another two dozen cases to fill the void. Except for four documents which were arguably habeas petitions, I did not allow Franklin to file these cases.

On December 7, 1981, the Ninth Circuit Court of Appeals issued an opinion affirming my dismissal in twenty-two cases but reversing in eleven cases in which it believed Franklin alleged "something more than utterly insubstantial constitutional claims." *Franklin v. Oregon,* 662 F.2d 1337, 1346 (9th Cir.1981).

This opinion, in part, attempts to answer the question left open in *Franklin,* 662 F.2d at 1340 n. 1: when may a district court dismiss a complaint filed *in forma pauperis* as frivolous or malicious under 28 U.S.C. § 1915(d)?

On January 12, 1982, I issued an order to carry out the court of appeals' mandate. I reinstated the eleven reversed cases and the four I had dismissed in the interim between my May 29, 1980 order and the court of appeals' opinion. I also allowed Franklin to file the rest of his cases that had accumulated in our court. This brought the "Franklin Docket" to thirty-nine separate cases. (It now stands at sixty-four).[3]

Franklin had paid the filing fees on the original thirty-seven cases, of which fifteen remained. However, in my January 11,

1982 order, I tentatively allowed Franklin to proceed *in forma pauperis* because he appeared to meet the poverty requirements of 28 U.S.C. § 1915(a). *See Brown v. Schneckloth,* 421 F.2d 1402, 1403 (9th Cir.), *cert. denied,* 400 U.S. 847, 91 S.Ct. 95, 27 L.Ed.2d 85 (1970). I then began the sisyphean task of having these cases processed. I referred the Franklin Docket to Judge Hogan in Eugene and asked attorney John Miller of Salem to consider assisting Franklin or accepting appointment as his counsel.

In February 1982, the Clerk prepared two sets of files to enable Franklin and his attorney to serve process in the cases. The sets contained copies of all relevant papers in each of the thirty-nine cases, along with the forms needed to issue summonses to all defendants named but not served. Because Franklin was proceeding *in forma pauperis,* all he needed to do was forward the completed forms to the U.S. Marshal, or a substitute, for service. Franklin had previously sent the court some instruction forms but these were too vague to serve their purpose. As will become apparent below, Franklin is not always sure against whom he is bringing lawsuits. *See* Nos. 79–988 and 79–1158, discussed *infra* at 1321–1322. Mr. Miller advises me that after he received these two sets of materials (in February 1982) he delivered one complete set to Franklin at OSP.

From time to time during 1982, I inquired informally of Judge Hogan and Mr. Miller as to how the cases on the Franklin Docket were progressing. Other than an occasional issuance of a summons, not much appeared to be happening. Nor could it until Franklin explained to his attorney which lawsuits he wished to pursue against which defendants.

---

me the sheets were suits. I never could get over that monstrous elephant."
Read, *Inmate Guided by "Thou Shalt Sue" in State Litigation,* The Portland Oregonian, May 8, 1983, at Cl, col. 1, 5.

**2.** This figure actually understates—significantly—Franklin's endeavors. In addition to the thirty-seven cases I was then handling, Judge Hogan had earlier processed about forty-five of Franklin's filings. Most of these cases ended

with orders of dismissal; however, one case did go to trial. Some were on a "finding and recommendation" basis, (28 U.S.C. § 636), while, in others, both sides consented to magistrate jurisdiction.

**3.** Franklin claims he has 140 lawsuits. *See* Read, *supra* note 1, at col. 2. Except as stated in note 2, I do not know where the others are, nor do I wish to find out.

In the fall of 1982, I visited OSP in the course of a prison conditions case I was handling. *See Capps/West v. Atiyeh,* 559 F.Supp. 894 (D.Or.1982) (*Capps/West II*). While going through the segregation and isolation building (S & I), I met and chatted briefly with Franklin.[4] At that time (November 26, 1982), I advised Franklin that if he did not take action, *e.g.,* serve process, in his many cases, I intended to dismiss them for want of prosecution. While Franklin complained somewhat about his attorney's performance, he did not mention any particular grievances he had against Mr. Miller. I urged Franklin to cooperate with Mr. Miller to move the cases along. Because I was unsure what the record showed, I issued an order on December 9, 1982, formally appointing Mr. Miller. That order also specified that summonses should issue in the cases on the Franklin Docket by February 15, 1983, or I would dismiss them for want of prosecution under L.R. 260–3.

On February 8, 1983, I received a phone call from Judge Hogan. At that time, he was holding an informal status conference with Mr. Miller. He told me that Franklin had lodged a complaint against Mr. Miller with the Oregon State Bar. I then advised Mr. Miller by letter, that he was no longer obliged, as an appointed attorney under 28 U.S.C. § 1915(d), to go any further with the arrangements for service of process. I did not believe that I should be the instrument by which Franklin could create a Franklin Docket with the Oregon State Bar's Office of General Counsel. I sent a copy of this letter to Franklin, explaining that it would be up to him to effect service of process by the February 15th deadline. Mr. Miller then delivered his set of the case files to Franklin.

The deadline passed. On March 9, 1983, Franklin wrote to me asking for a new attorney and an additional two-year period within which to serve process. On April 25,

1983, I received a formal motion to that effect. For reasons more fully apparent below, I deny the requests.

## I

In this section I dispose of the remainder of Franklin's original thirty-seven cases.

### A. Dismissal for Failure to Prosecute

Those cases for which Franklin failed to serve process are dismissed for want of prosecution. These cases include Nos. 79–634, 79–990, 79–991, 79–1051, 79–1160, and 79–1332.[5]

In Nos. 79–985, 79–896, 79–992, and 80–216, Franklin served some of the defendants. The defendants answered promptly but Franklin has taken no action in these cases since 1980. These cases too are dismissed for want of prosecution.

■ A trial court may sua sponte dismiss a case for failure to prosecute. *Link v. Wabash R.R.,* 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); *Tolbert v. Leighton,* 623 F.2d 585, 586 (9th Cir.1980); *cf.* Fed.R.Civ.P. 41(b). To dismiss Franklin's cases for failure to prosecute, I must consider (1) the strength of the evidence of Franklin's dilatoriness; (2) whether I warned Franklin there was a risk of dismissal; and (3) the age of the case. *Tolbert,* 623 F.2d at 587.

■ First, in four years, Franklin has done no more than file the cases and issue summonses. In most instances he has not even done that much. This is far stronger evidence that Franklin has been deliberately dilatory than merely the unexcused absence from a pretrial conference. *See id.; Anderson v. Air West, Inc.,* 542 F.2d 522, 525 (9th Cir.1976). Franklin has given no excuse for letting his cases lie dormant other than his incarceration. Nor could he.

---

4. Franklin's confinement in S & I is the subject case No. 83–705, discussed *infra* at 1329.

5. While this opinion was being prepared, Franklin tendered Marshal's instruction forms to serve process on those defendants who had been named but not served in Nos. 79–634 and

79–1160. I note that this belated effort comes two months after the deadline I set for service of process and four years after the filing of the cases. For reasons discussed within, in either respect, service is no longer timely.

And Franklin's incarceration does not absolve him of the responsibility to prosecute his actions diligently. *Collins v. Pitchess,* 641 F.2d 740, 742 (9th Cir.1981). Though Collins was incarcerated in California's Soledad state prison, he actively prosecuted his pro se civil rights action, submitting moving papers to the court and participating in discovery. Nothing prevented Franklin from doing the same. Franklin's boredom with his original lawsuits has not cooled his litigious ardor. Since the court of appeals' opinion, Franklin has tendered for filing an additional twenty-five complaints. *See* Section III *infra* at 1328. I find that Franklin's conduct (or lack thereof) in his original lawsuits constitutes bad faith. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980).

Second, I personally warned Franklin on November 26, 1982, in the presence of the State's counsel, that dismissal was imminent. I reinforced that admonition by order of December 9, 1982.[6]

Third, these cases are three, and, in some instances, four years old. The court of appeals has not drawn a bright line between young and old cases. *Compare Tolbert,* 623 F.2d at 586 (seven-month old case improperly dismissed) *and Raiford v. Pounds,* 640 F.2d 944, 945 (9th Cir.1981) (per curiam) (eleven-month old case improperly dismissed) *with Citizens Utility Co. v. American Telephone & Telegraph Co.,* 595 F.2d 1171, 1173–74 (9th Cir.), *cert. denied,* 444 U.S. 931, 100 S.Ct. 273, 62 L.Ed.2d 188 (1979) (sixteen-year old case properly dismissed). However, Franklin's cases concern incidents which, though of constitutional significance to Franklin and to the court of appeals panel, are likely so inconsequential to have faded from the defendants' memories over the past three or four years.[7] *Cf. Norman v. Reagan,* 95 F.R.D. 476, 476 (D.Or.1982). For all intents and purposes, these cases are old.

Having determined that the *Tolbert* factors favor dismissing these cases, I must then balance the policy favoring disposing of cases on their merits with (1) the need to manage my docket; (2) the public's interest in expeditious resolution of litigation; and (3) the risk of prejudice to the defendants. *Citizens Utility Co.,* 595 F.2d at 1174; *Nealy v. Transportacion Maritima Mexicana, S.A.,* 662 F.2d 1275, 1279–80 (9th Cir.1980).[8]

The first two *Citizens Utility* factors are often expressions of the same concern: efficient administration of judicial business for the benefit of all litigants. *Nealy,* 662 F.2d at 1279. I am required to tend Franklin's cases even when he lets them lie dormant for months on end. The more time I take with Franklin's plethora of complaints, the less time I can spend resolving disputes for litigants more anxious to vindicate their rights than to flaunt their litigious machismo. The Franklin Docket accounts for a substantial percentage of my assigned civil caseload. Simply having these cases hibernating on my docket, with the prospect that they could suddenly spring to life, reduces the number of new cases that can be assigned to me.

---

**6.** Because I did not have a court reporter with me to transcribe my chance meeting with Franklin, *see* 28 U.S.C. § 753(b), I have not treated the November 26th proceeding as the warning to which he is entitled. My decision is based instead on the December 9th order which is a part of the record.

**7.** The court of appeals' opinion fully describes the nature of Franklin's allegations in these cases. *See Franklin,* 662 F.2d at 1346–47. It would serve no purpose to recount them again here.

**8.** The court of appeals has not yet explained the relationship between *Tolbert* and *Citizens Utility* tests. For example, does a district court judge abuse his or her "already weary discretion," *Bertrand v. United States,* 562 F.Supp. 222, 225 (D.Or.1983), by running through only one of the tests? I suspect the tests overlap to some degree. For instance, the older a case is, the greater the risk of prejudice to the defendants. For the most part, however, the tests seem complementary. Both have as their ultimate object a result fair to litigants and to the court. The *Tolbert* factors require close scrutiny of the plaintiff's conduct; the *Citizens Utility* factors emphasize the courts' and defendants' interests. By discussing the tests in this order, I do not mean to indicate that I believe that one test is more important than the other.

 The remaining factors require me to consider what is fair to the adversaries. Because the statute of limitations may well have run, *Kosikowski v. Bourne,* 659 F.2d 105 (9th Cir.1981), dismissal may prevent Franklin from litigating the merits of his claims. Though cases—especially civil rights cases—should be decided on their merits, that policy may give way where the plaintiff's delay has prejudiced the defendant's case. Because Franklin has no excuse for his delay, the burden of production does not shift to the defendants to show actual prejudice. *See Nealy,* 662 F.2d at 1281. The law presumes injury from an unreasonable delay. *Alexander v. Pacific Maritime Association,* 434 F.2d 281, 283 (9th Cir.1970). In this case there is a clear showing of willful delay tantamount to bad faith, particularly in the service of process.[9] Though this court bent over backwards to help Franklin effect service within the statutory period, he did not do so. Or.Rev.Stat. § 30.275(3), *see Kosikowski,* 659 F.2d at 108; *cf. Nealy,* 662 F.2d at 1278–79 n. 5 ("the district court should consider whether the plaintiff was within his rights under the relevant state law."). Delay in serving a complaint is a particularly serious failure to prosecute because it affects the defendant's preparations. *Pearson v. Dennison,* 353 F.2d 24, 28–29 (9th Cir.1965). The defendants may, in reliance on the statute of limitation, have destroyed important records. *Id.*

Even the defendants who received copies of the complaint have been prejudiced by Franklin's delay. Early presentation was essential because the evidence in these cases depends upon recollections about conversations and conduct. *See Moore v. Telfon Communications Corp.,* 589 F.2d 959, 968 (9th Cir.1978). Franklin's failure to proceed with these actions has ensured that memories have faded and that witnesses have moved away or died.[10]

 I have examined possible meaningful and less draconian alternatives to dismissal with prejudice. *Anderson,* 542 F.2d at 525–26. I conclude that none suffices to protect the defendants from the prejudice Franklin's delay has occasioned. In another case I might be able to order the plaintiff to reimburse the defendant for the extra costs caused by the plaintiff's delay. *Id.* at 526; *cf; * Fed.R.Civ.P. 37(b). But here the defendants have not gone to any extra work. Franklin has simply made it difficult, if not impossible, for them to present their versions of the events. In addition, it would not do any good to order Franklin to pay costs because he does not have any money. *See Thomas v. Gerber Productions,* 703 F.2d 353 (9th Cir.1983). Though Franklin flagrantly abuses this court's processes, under the circumstances here, it would be prema-

---

9. In evaluating the reasonableness of Franklin's delay, I have considered and rejected the possibility that Franklin may have been confused as to whether case No. 79–990 survived the court of appeals' opinion. In its CONCLUSION, the court of appeals said No. 79–990 was affirmed. (No. 80–3318). In the body of its opinion, however, the court discussed the case as if it were improperly dismissed. I have treated the numerical listing at the end of the court's opinion, rather than the text, as that portion that is in error. The panel's confusion is perhaps understandable given that even Franklin has trouble (as I do) keeping straight his cases and their docket numbers. *Compare* No. 82–036 *with* No. 83–699.

Conversely, the court of appeals discussed No. 82–33 (No. 80–3337) as if I properly dismissed it. But the CONCLUSION lists the case as having been reversed. Following the court of appeals' mandate, I allowed Franklin to refile this case. I have since treated it as dismissed. If an order is necessary to reflect that understanding, this opinion will serve as that order.

10. This case presents an interesting problem: have the State defendants "appeared" in those cases in which Franklin did not serve process but in which the Attorney General's office filed a designation of record on appeal? As the court of appeals noted in *Franklin,* 662 F.2d at 1341, when the district court dismisses an action before issuing summonses, the defendants are not *required* to respond on appeal because they were not parties to the action below. The answer to this question requires cerebration I prefer to reserve for, frankly, a more important context. Regardless whether I consider the State to have been served, Franklin's delay has been so egregious, and the passage of time so debilitating to the defendants' cases, that only dismissal of these actions with prejudice serves the ends of justice.

ture for me to invoke the remedy of contempt. I do not, however, rule out the possibility of imposing a jail sentence if Franklin follows the trail blazed by John Robert Demos. *See Demos v. Kincheloe,* 563 F.Supp. 30 (E.D.Wash.1982). The contempt sanction would not make the defendants in these cases whole but it might affect Franklin's future conduct. *See* Section V *infra* at 1333. It would not be appropriate for me to discipline Franklin's counsel. *See Raiford,* 640 F.2d at 945 n. 1. New counsel would not ensure the more expeditious processing of these cases. The unreasonable delay here was occasioned by plaintiff not plaintiff's counsel. Mr. Miller did everything that could reasonably be expected of him given that, early in their association, Franklin began filing unfounded complaints with the Bar concerning Mr. Miller's conduct.[11] Finally, dismissal without prejudice would only exacerbate the defendants troubles by further delaying the actions.

## B. Dismissal for Failure to State a Claim

I have not dismissed cases Nos. 79–987, 79–988, and 79–1158 in the first instance for want of prosecution because Franklin was pursuing them, in one form or another, as late as February 1982.

### 79–987

Franklin alleges a Yamhill County jail officer temporarily took legal and personal papers from his cell and copied them. The court of appeals held this act arguably violated Franklin's right to privacy. *Franklin,* 662 F.2d at 1347 (No. 80–3315).

■ Franklin names as defendants the State of Oregon, Yamhill County, and Doug Billings, the officer he alleges ransacked his cell. Franklin has served at least the State and County. The State moves to dismiss the action as to it for failure to state a claim. Fed.R.Civ.P. 12(b)(6). Courteously, Franklin agrees. Therefore, No. 79–987 is dismissed as to the State.

■ Yamhill County and Billings move for summary judgment. In support of their motion, they tender affidavits from Billings and Sergeant Jon Kowolik, the County jail supervisor. The gist of their testimony is that the jail staff removed the papers at Franklin's request and did not copy any of them. Though he has had fifteen months to do so, (here, as well as in No. 79–998) Franklin has not responded. He may not rest on his pleadings to create disputed fact issues. *General Business Systems v. North American Philips Corp.,* 699 F.2d 965, 971 (9th Cir.1983); *Feldman v. Simkins Industries, Inc.,* 679 F.2d 1299, 1305 (9th Cir. 1982). The undisputed facts reveal nothing on which Franklin could state a claim for relief. Therefore, Billings and Yamhill County are entitled to judgment as a matter of law. This action is dismissed as to them.

### 79–988

Franklin alleges that while he was held in segregated confinement in the Yamhill County jail, an officer neglected to give him daily half-hour out-of-cell walks. This allegation is somewhat surprising because in other filings Franklin alleges he is crippled. Nevertheless, the court of appeals held that I had jurisdiction over this case because the denial of outdoor exercise may constitute cruel and unusual punishment. *Franklin,* 662 F.2d at 1346 (No. 80–3316) (citing *Spain v. Procunier,* 600 F.2d 189, 199 (9th Cir. 1979)).

It is difficult to tell who are the defendants in this case. Franklin originally named the State and Yamhill County. He amended by substituting Officer Frank Kowing for the State and County. But then Franklin went ahead and served the State and Yamhill County. Because all of the defendants have responded in some fashion, I will treat them as within the court's jurisdiction.

■ The State moves to dismiss the action as to it because Franklin fails to state a

---

11. At my request, the Assistant General Counsel forwarded copies of the Bar's file reflecting the several complaints Franklin had lodged.

To complete the record in these cases, the Bar materials are filed in case No. 83–712, discussed *infra* at 1330.

claim on which to base relief. Fed.R.Civ.P. 12(b)(6). Franklin has not responded. The State is not responsible for the County's alleged act of omission. The motion is granted. Franklin had his chance to amend under *Potter v. McCall,* 433 F.2d 1087, 1088–89 (9th Cir.1970) (per curiam). Case No. 79–988 is dismissed as to the State.

█ Kowing and Yamhill County move for summary judgment. In support of this motion, they submit affidavits from Kowing and Sergeant Kowolik stating that the jail staff regularly afforded Franklin the opportunity to exercise but that he chose to remain in his cell. Franklin has not responded to this motion. The undisputed facts reveal nothing on which Franklin could state a claim for relief. Therefore, Kowing and Yamhill County are entitled to judgment as a matter of law. The action is dismissed as to them.

*79–1158*

Franklin alleges he was denied exercise during the two months he spent in OSP's Psychiatric Security Unit. Franklin originally sued the superintendent and the State. Then he amended his complaint to delete the superintendent and the State; in their places he substituted the staff psychiatrist and the security sergeant. However, Franklin has served the defendants he no longer names but has not served the psychiatrist or the sergeant.

█ The superintendent and the State move for dismissal because, among other grounds, Franklin dismissed the action as to them through his amended complaint. Franklin has not responded. The motion is granted. Mindful as I am of the great leeway the court of appeals says I must give to pro se litigants like Franklin and his ilk, in the alternative I will rule on this motion as if the superintendent and the State were still in the lawsuit. Treating the case as in that posture, I grant their motion to dismiss for failure to state a claim. Fed.R.Civ.P. 12(b)(6). Franklin has

already had his chance to amend under *Potter,* 433 F.2d at 1088–89.

█ To the extent the psychiatrist and the sergeant are in the case, for the reasons stated above in Section IA, the action is dismissed as to them for failure to prosecute.

*C. Habeas Corpus*

█ Cases Nos. 79–640 and 82–034 are arguably petitions for writs of habeas corpus. Franklin is entitled to pursue one nonrepetitive post-conviction petition at a time. Case No. 82–039 is the most comprehensive and comprehensible of Franklin's petitions. If he wishes, he may proceed with that one.[12] Cases Nos. 79–640 and 82–034 are dismissed. To the extent these petitions allege grounds for relief independent of those asserted in 82–039, Franklin may amend the remaining petition to include them.

II

This section includes the twenty-four cases Franklin tendered during the pendency of his appeal. Franklin has done nothing to process these suits beyond filing them. I do not dismiss them for want of prosecution only because of *Nealy*'s admonition to allow plaintiffs the statutory period to effect service of process, 662 F.2d at 1278–79 n. 5, and I did not allow these cases to be filed until January 1982.

*A. Dismissed as Frivolous*

Following the court of appeals' opinion, I adhered to the "preferable procedure" and tentatively granted Franklin leave to proceed *in forma pauperis* because he appeared to meet the poverty requirements of 28 U.S.C. § 1915(a). *Brown,* 421 F.2d at 1403. I now evaluate the merits of Franklin's allegations under section 1915(d).

*1. Substance*

The court of appeals has not defined "frivolous" for purposes of section 1915(d).

---

12. On March 9, 1983, Franklin wrote to say he wanted his habeas cases held "in limbo" pending a renewed attempt at post-conviction relief in the state courts.

*See Franklin,* 662 F.2d at 1340 n. 1. It may well be that the legal standard escapes precise definition for it is but a district judge's practical response to irresponsible litigation that Congress and the courts would otherwise subsidize and encourage by the generosity of the *in forma pauperis* statute.

At least one article suggests that a dismissal as frivolous under 28 U.S.C. § 1915(d) should only be for lack of subject matter jurisdiction. Catz & Guyer, *Federal in Forma Pauperis Litigation: In Search of Judicial Standards,* 31 Rutgers L.Rev. 655, 672–79 (1978). The court of appeals' opinion in Franklin demonstrates that this cannot be the correct standard. It is simply far too easy to allege jurisdictional facts. For example, in case No. 79–990, the court of appeals held that placing Franklin in a cell with a heavy smoker arguably amounted to cruel and unusual punishment. *Franklin,* 662 F.2d at 1346–47 (No. 80–3318). If this is all it takes for an indigent litigant to get through the courthouse door, we had better begin building bigger courthouses. The efforts of even a relatively few litigants of the like of Franklin, Enoch Dickinson, Jr.,[13] John Robert Demos,[14] Lonzy Oliver,[15] Albert H. Carter,[16] and the Reverend Clovis Carl Green [17] could tie up every district court in this country. For inmates with much idle time and free paper, ink, and law books, the temptation is especially strong to file complaints that contain allegations that cannot be proved.[18] *Jones v. Bales,* 58 F.R.D. 453, 463 (N.D.Ga. 1972), *aff'd,* 480 F.2d 805 (5th Cir.1973) (per curiam). It is not fair to the defendants, the objects of this abuse, or to litigants with meritorious claims, for district courts to waste time processing inmates' *in forma pauperis* suits just because they allege jurisdictional facts.

█ Ordinarily, an *in forma pauperis* complaint that states (or with amendment could state) an actionable claim will not be dismissed as frivolous. *See Potter,* 433 F.2d at 1088–89; *Dodd v. Spokane County,* 393 F.2d 330, 333–34 (9th Cir.1968). At least, section 1915(d) dismissals are usually reviewed on appeal—whether expressly or otherwise—under something very nearly like the Fed.R.Civ.P. 12(b)(6) standard. As such, the allegations of the complaint are taken as true. Some cases, however, indicate that the district court judge may look beyond the face of an otherwise legally sufficient complaint to see if the action is frivolous. *See, e.g., Allison v. Wilson,* 434 F.2d 646, 647–48 (9th Cir.1970) (per curiam); *Conway v. Oliver,* 429 F.2d 1307, 1308 (9th Cir.1970) (per curiam); *Williams v. Field,* 394 F.2d 329, 331–32 (9th Cir.), *cert. denied,* 393 U.S. 891, 89 S.Ct. 213, 21 L.Ed.2d 171 (1968).

█ This view accords with that of Judge Higginbotham in *Daves v. Scranton,* 66 F.R.D. 5, 7 (E.D.Pa.1975) (citations omitted):

> The judgment which I must make is whether the complaint states a claim which has a reasonable probability of succeeding on the merits.... In evaluating

---

**13.** *See Dickinson v. French,* 416 F.Supp. 429 (S.D.Ala.1976).

**14.** *See Demos v. Kincheloe,* 563 F.Supp. 30 (E.D.Wash.1982).

**15.** *See In re Oliver,* 682 F.2d 443 (3d Cir.1982).

**16.** *See Carter v. Telectron, Inc.,* 452 F.Supp. 944 (S.D.Tex.1977). Carter is living proof of the old adage: "If at first you don't succeed, try, try again." He began his sojourn through the federal court system in the early 1960s, *see Carter v. United States,* 325 F.2d 697 (5th Cir. 1963), *cert. denied,* 377 U.S. 946, 84 S.Ct. 1353, 12 L.Ed.2d 308 (1964), finally obtaining a writ of habeas corpus in 1982. *See Carter v. Estelle,* 677 F.2d 427 (5th Cir.1982).

**17.** Clovis Carl Green is in all likelihood the most prolific prison litigant. He has prompted upwards of thirty published opinions. For a summary of Green's history of abuse, *see, e.g., In re Green,* 669 F.2d 779 (D.C.Cir.1981) (per curiam); *Green v. Arnold,* 512 F.Supp. 650 (W.D.Tex.1981); *Green v. Camper,* 477 F.Supp. 758 (W.D.Mo.1979).

**18.** "I can sit down and write a lawsuit and feel like my pen's got oil on it, it's so easy," [Franklin] said. "I can write a lawsuit quicker than you can snap your eyes, practically." Read, *supra* note 1, at col. 6.

this complaint I must assess *inter alia,* the merit of plaintiff's legal theory, the credibility of his allegations, as well as the existence of possible defenses. . . . I must also assess the character of the allegations insofar as they indicate a motive on the part of the plaintiff to merely harass or vex the defendants rather than to seek redress for a legitimate legal claim.

See *Gifford v. Congress,* 452 F.Supp. 802, 811–12 (E.D.Cal.1978). Only this standard gives the district court the freedom to fairly and responsibly balance the competing interests in *in forma pauperis* lawsuits. While the court of appeals found fault with my anticipating defenses when Franklin paid the filing fees, *Franklin,* 662 F.2d at 1346, it should not have the same objection when Franklin files for free. See *Holsey v. Bass,* 519 F.Supp. 395, 408–11 (D.Md.1981) (cases pro and con compiled). Frivolous suits burden the courts and obscure others' meritorious claims. They cost a lot of money. For example, it costs Oregon more than $1 million a year to defend inmates' suits, the vast majority of which are frivolous. Read, *supra,* note 1, at col. 1. And frivolous suits permit plaintiffs to use the vast resources of the federal government to harass individual defendants. Where service of process will use federal resources to burden defendants, section 1915(d) carves out a limited exception to Fed.R.Civ.P. 8(c). If a plaintiff wishes to see if a defendant will waive an affirmative defense, the plaintiff can pay the filing fee and foreclose the court from raising the defense on its own motion. But where there are obvious and complete defenses raised on the face of the complaint or by the court's records, a court may consider these defenses in determining pursuant to section 1915(d) whether the complaint is frivolous. In addition, a plaintiff's lack of success in related cases should also be relevant not only to motive but to his chances of succeeding in the case at bar. *Dickinson v. French,* 416 F.Supp. 429, 432 n. 6 (S.D.Ala.1976). A litigant like Franklin, who inundates a court with a sea of senseless solipsisms, should not be surprised if he suffers the same fate as the boy who cried "Wolf!" *Cf. Carter v. Telectron, Inc.,* 452 F.Supp. 944, 998 (S.D.Tex.1977) ("closer screening" of plaintiff's filings pursuant to section 1915(d) compelled because of his prior pattern of abuse).

*B. Procedure.* Because sua sponte dismissal as frivolous under section 1915(d) is often essentially for failure to state a claim, the question arises whether I must follow the procedural steps outlined in *Dodd,* 393 F.2d at 334. See *Franklin,* 662 F.2d at 1340–41. Specifically, may I dismiss an *in forma pauperis* action as frivolous before issuing a summons?

These cases are in the same posture as those in *Franklin* except that Franklin is now proceeding *in forma pauperis.* I have allowed Franklin to file his lawsuits but, for the most part, I propose to dismiss them before issuing summonses. There is language in *Franklin,* 662 F.2d at 1341, broad enough to preclude the actions I propose to take: "before a summons is issued a district court may not dismiss, sua sponte, for failure to state a claim an action over which it has subject matter jurisdiction." I do not believe the court intends that language to control dismissals of *in forma pauperis* complaints under section 1915(d). See *Williams,* 394 F.2d at 331–32.

The court of appeals believes its time and resources are wasted by the district courts' summary dismissals because summary dismissals breed appeals, which may have to be decided in a nonadversary setting. *Franklin,* 662 F.2d at 1341. Apparently, it believes it is doing our work for us. Naturally, we in the trenches see things somewhat differently. The appellate courts prefer we district court judges dispose of *in forma pauperis* cases only after reviewing affidavits or holding evidentiary hearings. See *Estelle v. Gamble,* 429 U.S. 97, 112, 97 S.Ct. 285, 295, 50 L.Ed.2d 251 (1976) (Stevens, J., dissenting).

This process would certainly ensure that district court judges would dismiss only the least founded of all *in forma pauperis* cases. But I question whether these procedures are the most expeditious way for the court

system as a whole to thresh through the haystack of frivolous lawsuits in search of the meritorious golden needle. Requiring district courts to reach the merits of an *in forma pauperis* case only at the summary judgment stage is very solicitous of plaintiffs' rights. It does not, however, adequately protect the rights of defendants or other litigants. Persons proceeding *in forma pauperis* are immune from the imposition of costs if they are unsuccessful. Because of their poverty, they are *de facto* immune from later tort actions for abuse of process. Indigent prisoners have nothing to lose and everything to gain. Therefore, the procedures built into our system for defendants to protect themselves from frivolous lawsuits do not work in this context. All that stands in the way of this abuse of the free filing privilege is a district court judge exercising his or her discretion under section 1915(d).[19]

To the extent one can strike a balance between these competing interests, the Federal Judicial Center's Prisoner Civil Rights Committee has done so. In its *Recommended Procedures For Handling Prisoner Civil Rights Cases In the Federal Courts* 59 (FJC, Jan. 1980) (footnote omitted), Judge Aldisert's committee "recommends that the decision whether to dismiss pursuant to § 1916(d) [sic: 1915(d)] be made prior to the issuance of process. In this way, the defendant will be spared the expense and inconvenience of answering a frivolous complaint." This is also the procedure followed or approved in most circuits. *See Martin-Trigona v. Stewart,* 691 F.2d 856, 857 (8th Cir.1982) (per curiam); *Boyce v. Alizaduh,* 595 F.2d 948, 950–51 (4th Cir.1979); *Mitchell v. Beaubouef,* 581 F.2d 412, 415 (5th Cir.1978); *Smart v. Villar,* 547 F.2d 112, 113–14 (10th Cir.1976). *But see Wartman v. Wisconsin,* 510 F.2d 130, 133–34 (7th Cir. 1975); *Lewis v. New York,* 547 F.2d 4, 5 (2d Cir.1976).

With these thoughts in mind, I now turn to the individual cases Franklin filed.

### 82–048

■ Franklin alleges prison guards abridged his "right to be supplied" with T-shirts. As Franklin admits, this claim arises out of the same set of circumstances as No. 79–1156. The court of appeals affirmed my dismissal of No. 79–1156 for want of subject matter jurisdiction. *Franklin,* 662 F.2d at 1343 (No. 80–3336). Franklin does not get two bites of the apple. Case No. 82–048 is obviously frivolous. It is dismissed. 28 U.S.C. § 1915(d).

### 82–049

■ Franklin complains that he did not receive some unspecified medical treatment because an officer neglected to wake him from his afternoon nap.

Without more, Franklin has no reasonable chance of succeeding with his claim. *See Franklin,* 662 F.2d at 1344 (Nos. 80–3317 and 80–3337). He does not allege facts to indicate the officer acted with deliberate indifference to his serious medical needs. *See Gamble,* 429 U.S. at 104, 97 S.Ct. at 291. For instance, Franklin does not allege *any* physical injury from missing his treatment. He claims only to have suffered "mental frustration." I have learned that all Franklin means by that phrase is that someone got his dander up. *See, e.g.,* No. 82–035, discussed *infra* at 1326. The character of the allegations indicates Franklin wants to harass the defendants rather than to seek redress for a legitimate claim.

Claim No. 82–049 is dismissed as frivolous and malicious. 28 U.S.C. § 1915(d).

### 82–050

Franklin sues his attorney, the State Attorney General, and an assistant attorney

---

**19.** The court of appeals concern with the shuttling of cases between the district and appellate courts may be greater than necessary in light of its many announcements that it accords the district courts "especially broad" discretion in prisoner *in forma pauperis* lawsuits. *E.g., Milton v. Nelson,* 527 F.2d 1158, 1160 (9th Cir. 1976); *Diamond v. Pitchess,* 411 F.2d 565, 566 (9th Cir.1969); *Williams v. Field,* 394 F.2d 329, 331 (9th Cir.), *cert. denied,* 393 U.S. 891, 89 S.Ct. 213, 21 L.Ed.2d 171 (1968); *Shobe v. California,* 362 F.2d 545, 546 (9th Cir.) ·(per curiam), *cert. denied,* 385 U.S. 887, 87 S.Ct. 185, 17 L.Ed.2d 115 (1966).

general for unreasonably prolonging what turned out to be an unsuccessful state court action for post-conviction relief.

■ Franklin's complaint indicates he raised the issue of the State's allegedly dilatory tactics in the state court proceeding. He may not press that claim again here. *See Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (preclusion principles apply to a section 1983 claim). In any event, the defendants are shielded from section 1983 liability for the conduct Franklin alleges here. *Franklin,* 662 F.2d at 1345. To the extent this complaint can be read as a conspiracy in violation of 42 U.S.C. § 1985, Franklin does not, nor could he, allege that the defendants intended to discriminate against him as a member of a constitutionally-protected class. *Id.* at 1345 n. 8.

■ To the extent that this complaint could be read as a petition for a writ of habeas corpus, Franklin is free to add the allegations to case No. 82–039. In all other respects, however, No. 82–050 is dismissed as frivolous. 28 U.S.C. § 1915(d).

*82–051*

■ Franklin sues prison guards who allegedly "wear clopping heels on their boots, which causes plaintiff to feel he's in a Natsy [sic] prison camp." All Franklin wants to do is reciprocate what he sees as harassment. Case No. 82–051 is frivolous and malicious. It is dismissed. 28 U.S.C. § 1915(d).

*82–052*

■ In a novel use of a discrimination lawsuit, Franklin complains about the racial diversity of the Parole Board. Not only does Franklin's complaint not state a claim for relief but his supporting affidavit shows

that this action is entirely vexatious. Franklin must find a forum other than this federal court in which to ventilate his small-minded apartheid philosophy.

To the extent Franklin's allegations could be interpreted as attacks on the validity of his conviction, he may add them to his remaining habeas petition, No. 82–039. In all other respects, case No. 82–052 is dismissed as frivolous and malicious. 28 U.S.C. § 1915(d).[20]

*82–054*

■ Franklin complains the OSP staff violated his right to free speech by disciplining him for commenting on a guard's allegedly out-of-wedlock birth. Whatever first amendment rights an inmate retains in his use of expletives does not extend to directing them toward a guard. *See Bartholomew v. Reed,* 477 F.Supp. 223, 229–31 (D.Or.1979), *aff'd in part, rev'd in part sub nom. Bartholomew v. Watson,* 665 F.2d 915 (9th Cir.1982). This action is dismissed as frivolous and malicious. 28 U.S.C. § 1915(d).

*82–035*

■ Franklin seeks $2 million general and $1 million punitive damages for the mental frustration he says a Portland television station caused him when one of its programs allegedly misidentified a "14 wheeler tractor and trailer rig" as an "18 wheeler."

This action is obviously frivolous. It is dismissed. 28 U.S.C. § 1915(d).

*82–036*

■ Franklin alleges an assistant attorney general slandered him. This claim does not involve the violation of any federally protected right. *Franklin,* 662 F.2d at 1344 (No. 80–3333). Case No. 82–036 is obvious-

---

**20.** In a singularly lucid passage, Franklin suggests that governors- and judges-elect should spend some time in jail to put later corrections decisions in the proper perspective. Apparently Franklin had a kindred spirit on the ABA Advisory Committee on Sentencing and Review: "One member of the Advisory Committee has been heard to say, not entirely in jest, that if he could have his way he would sen-

tence all new judges, and some old ones from time to time to thirty days in prison." Standards Relating to Sentencing Alternatives and Procedures § 7.4 commentary at 301 (1968).

While it is unlikely that Franklin will get his way, he may, however, include his time spent at OSP in his statement of his qualifications for governor.

ly frivolous; it is dismissed. 28 U.S.C. § 1915(d).[21]

### 82–040

■ Franklin alleges the Oregon State Hospital staff violated his first amendment rights by restricting his association with other patients in the mentally and emotionally disturbed inmates (MED) program. Franklin's affidavit indicates that the staff's alleged action was because it believed Franklin was interfering with its treatment program. As such, even if Franklin could state a claim for relief, he has no reasonable chance of succeeding with this action. Case No. 82–040 is dismissed as frivolous. 28 U.S.C. § 1915(d).

### 82–041

■ Franklin alleges that it took OSP officials three months to send his personal belongings (radio, vitamins, bible, and papers) to him at the State Hospital. This complaint cannot set forth the violation of a constitutional right because Oregon provides a remedy to persons who believe they have suffered a tortious loss at the State's hands, Or.Rev.Stat. § 30.260 et seq. (1981). See Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Case No. 82–041 is dismissed as frivolous. 28 U.S.C. § 1915(d).[22]

### 82–042

■ Franklin complains that the State does not provide him with the doctor of his choice. He does not allege that the OSP medical staff has been deliberately indifferent to a serious medical need. Franklin simply prefers to be treated by an orthopedic surgeon other than the one on OSP's staff. While Franklin may have a right to obtain medical care from a private nonprison doctor at his own expense, Harris v. Jacobs, 621 F.2d 341, 342 (9th Cir.1980) (per

curiam), he has no right under the circumstances alleged to expect the State to supply him with that outside care. This action is dismissed as frivolous. 28 U.S.C. § 1915(d).

### 82–044

■ Franklin complains about the medical care he received at OSP. Franklin fell and injured his hip. He has been examined at the OSP infirmary and at a local hospital. After obtaining a half dozen X-rays of Franklin's pelvis, the OSP doctors could not find a traumatic injury. Franklin is convinced, however, that he has a broken hip. All this shows is a difference in medical judgment. Franklin fails to show the physicians have acted negligently, let alone with deliberate indifference to a serious medical problem. At this stage, therefore, Franklin's complaint does not state a claim. Franklin, 662 F.2d at 1344. This action is dismissed as frivolous. 28 U.S.C. § 1915(d).

### 82–045

■ Franklin claims the OSP staff violated his right to free speech by disciplining him for his use of a racial epithet. While this could be a close question in the free world, see State v. Spencer, 289 Or. 225, 611 P.2d 1147 (1980); cf. Or.Rev.Stat. § 166.155 (1981), the same solicitude toward abusive language does not extend to the prison context. Bartholomew, 477 F.Supp. at 229–31.

The vicious and ugly character of the allegations in his complaint shows Franklin is merely trying to carry on the badgering for which he was disciplined in the first place. I choose not to become part of it. This action is dismissed as frivolous and malicious. 28 U.S.C. § 1915(d).

### 82–046

■ Franklin wants to be Governor of Oregon. Or.Rev.Stat. § 137.280(1)(a) stands in his way. It provides that during

---

**21.** While this opinion was being prepared, Franklin discovered that Nos. 82–036 and 83–699 are identical. He then moved to "kill," i.e., dismiss, No. 82–036. The motion is granted. Case No. 82–036 is "killed," i.e., dismissed with prejudice.

**22.** While this opinion was being prepared, Franklin moved to "kill" No. 82–041. I am more than pleased to oblige. The motion is granted. Case No. 82–041 is dismissed with prejudice.

the term of his imprisonment a felon may not be a candidate for or hold public office. Franklin also challenges subsection (1)(d) which withholds the right to vote during a felon's incarceration.

Though this statute has not been tested for constitutional sufficiency, I am confident it would pass with flying colors. *See* U.S. Const.Amend. 14, § 2; *Richardson v. Ramirez,* 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974) (disenfranchisement of felons does not violate equal protection clause). This action is frivolous. 28 U.S.C. § 1915(d).

*82–047*

■ In this case, Franklin invokes a bit of Oregon lore. In 1923, the D'Autremont boys robbed a train in the Siskiyou Mountains, killing several railroadmen. *See State v. D'Autremont,* 212 Or. 344, 317 P.2d 932 (1957). Franklin alleges that since the capture and incarceration of the D'Autremonts, the trains of the Southern Pacific Transportation Company or the Burlington Northern Railroad Company, or both, blow their whistles as they pass by OSP in the early morning hours. Franklin claims that the railroads' alleged practice violates his "right to public piece [sic]."

Even assuming the railroads do carry on such a heinous practice, it would not violate one of Franklin's federally protected rights.

■ Franklin has named the United States Attorney General as a defendant because Franklin believes that one of the men the D'Autremonts murdered was a federal postal employee and because the defendant railroads engage in interstate commerce. He does not explain the connection between these facts and his claimed constitutional violation. This action is obviously frivolous. It is dismissed. 28 U.S.C. § 1915(d).

**B. Habeas Corpus**

As discussed in Section 1A, above, Franklin may proceed with one nonrepetitive post-conviction petition, 82–039. Cases Nos. 80–892, 80–893, 80–894, 80–895, and 82–037

are dismissed. If they contain grounds for relief independent of those asserted in 82–039, Franklin is free to amend his petition.

**C. Cases Not Dismissed**

At this stage, I cannot say that the following cases are frivolous. If Franklin serves process, he may proceed with them.

*82–053*

■ Franklin alleges that prison guards have retaliated against his filing lawsuits by failing to protect him from inmate assaults. Because prison officials have a duty to take reasonable steps to protect inmates from physical abuse, *Capps/West II,* 559 F.Supp. at 903, Franklin appears to allege the violation of a constitutionally protected right.

*82–038*

■ Liberally construed, Franklin's claim is that prison guards used unreasonable, excessive force when they transferred him from OSP to the State Hospital. Because the unjustified infliction of bodily harm upon a prisoner gives rise to liability under section 1983, *Albers v. Whitley,* 546 F.Supp. 726, 732 (D.Or.1982), at this stage this action is not frivolous. It may be appropriate for me to dismiss this case if it later appears that Franklin cannot show the alleged excessive use of force rose to constitutional dimensions, *id.* at 733, or if the State proves the guards enjoyed a qualified immunity from damages. *Id.* at 735.[23]

**D. Miscellanea**

*82–043*

■ Out of an abundance of caution, I had the Clerk file a letter from Franklin as if it were a complaint. In it, he complains variously about his medical care, transfer to the State Hospital, and lack of parole. Upon further reflection, I have concluded that filing this correspondence was a mistake. When Franklin wants to file a complaint he designates his document to that

**23.** While this opinion was being prepared, Franklin sent the court Marshal's instruction forms for issuance of summonses in No. 82–038. This will be done as soon as practicable.

effect. *Cf. Holsey,* 519 F.Supp. at 407 n. 27 (holding plaintiff to a higher standard of pleading than is ordinarily imposed on a novice pro se litigant). Franklin suffers no prejudice from dismissal of this case because all of Franklin's specific concerns are the subjects of lawsuits: Nos. 82–044, 83–721, and 82–052.

Case No. 82–043 is dismissed.

### III

This section includes the twenty-five cases Franklin has tendered since the court of appeals' December 1981 opinion. Suffice it to say, the court of appeals' opinion did little to encourage Franklin to confine his filings to colorable claims. Nevertheless, I will allow Franklin to file these cases without paying fees. 28 U.S.C. § 1915(a); *Brown,* 421 F.2d at 1403. I now turn to the merits of each case. 28 U.S.C. § 1915(d).

### A. *Cases Dismissed as Frivolous* ·

#### 83–697

■ Franklin renews his effort to obtain the services of a private nonprison orthopedic surgeon. As in No. 82–042, this case is dismissed as frivolous. 28 U.S.C. § 1915(d).

#### 83–698

■ Franklin sues "Ronal Reagan and his constiuants [sic]" for $8.9 million for "violation of undue restraint." Franklin complains that an unspecified executive order requires Oregonians to wear seat belts and that the U.S. Senate Commerce Committee endorsed a model drunk driving bill.

Despite Franklin's maturing ability to adapt legal arguments to his own view of reality (for example, he alleges that the seat belt order is underinclusive because it does not apply to bicycles and horses as well as cars), I still conclude that this case must be dismissed. It is obviously frivolous. 28 U.S.C. § 1915(d).

#### 83–699

This action is identical to No. 82–036; therefore, it is dismissed. 28 U.S.C. § 1915(d). I note that in contrast to No. 82–036, Franklin purports to have served the defendant.

#### 83–700

■ Franklin complains that he lost sleep on three occasions because OSP's steam heater pipes snap and pop. As precious as Franklin's sleep may be to him and to his keepers, these allegations cannot rise to the level of an eighth amendment claim.

This action is obviously frivolous. It is dismissed. 28 U.S.C. § 1915(d).

#### 83–701

■ Franklin alleges he endures "Harassment by Water." Specifically, Franklin complains that the sprinkling of the prison yard during the summer months makes it a difficult for him to find a dry place to lie down.

Apparently, Franklin does not quarrel with the notion that, even in Oregon, lawns need watering. He notes, however, that the robins are lethargic. From this he reasons that the yard's worms have been "flushed out." Therefore, he concludes the lawn is overwatered and his constitutional rights violated. Not even the enthymematic grace of this purported syllogism adds enough merit to the case to save it from being dismissed. *Cf. Norman,* 95 F.R.D. at 477 ("liberally construed, the references to the birds, crickets, ants, and butterfly could constitute a *Bivens* claim."). It is obviously frivolous. 28 U.S.C. § 1915(d).

#### 83–702

■ Franklin complains that OSP rules on cleanliness conflict with his constitutional right to accumulate an unlimited number of newspaper clippings. Insofar as these allegations implicate first amendment concerns, Franklin has no reasonable chance of succeeding. Cleanliness preserves the internal order and discipline of the institution. The order to clean his cell did not limit Franklin's access to newspapers. As Franklin concedes, his cell is "clutter[ed]," and the order to clean his cell proscribed only "excess" clippings. Plainly, Franklin could not establish that the order restricted his first amendment freedoms more than

was necessary to further legitimate penal objectives. *See Procunier v. Martinez,* 416 U.S. 396, 412–13, 94 S.Ct. 1800, 1810–1811, 40 L.Ed.2d 224 (1972).

Case No. 83–702 is dismissed as frivolous. 28 U.S.C. § 1915(d). Just because the State requires Franklin to live in a cage does not mean he can turn it into a bird cage.

*83–703*

■ According to Franklin, OSP's superintendent ordered officers to "strip cells of all boxes" thereby violating his "writes [sic] to have and to hold file cartons." Franklin may have served the superintendent.

Franklin does not allege that the officers took any of his boxes' contents. Prison officials are free to dictate what personal effects inmates may have, *see Ford v. Schmidt,* 577 F.2d 408, 410 (7th Cir.1978), unless those effects, such as mail, enjoy some constitutional protection. *See Pepperling v. Crist,* 678 F.2d 787, 789–91 (9th Cir.1982).

Case No. 83–703 is dismissed as frivolous. 28 U.S.C. § 1915(d).

*83–704*

■ Franklin brings a malpractice action against the physicians who performed back surgery on him in 1963. Franklin says he served the State Attorney General. But the complaint does not allege that the doctors' actions were state actions. Nor do I perceive any other basis for federal jurisdiction. Even if I did, this action is plainly barred by the statute of limitations, Or.Rev. Stat. § 12.110(4) (1981). *See Holsey,* 519 F.Supp. at 411–13. Therefore, this action is dismissed as frivolous. 28 U.S.C. § 1915(d).

*83–705*

■ As in No. 82–045, Franklin complains that he was disciplined for using a racial epithet. For the reasons discussed above, this action is dismissed as frivolous and malicious. 28 U.S.C. § 1915(d). Franklin is not entitled to proselyte among inmates his views of white supremacy regardless of their purported religious origin. "It is, after all, a prison, not Hyde Park,

that defendants are running." *Bartholomew,* 477 F.Supp. at 230.

*83–706*

■ Franklin contends that the superintendent violated his "right to be at piece [sic] and/or treated better" by placing him in S & I near a vile-mouthed inmate. This complaint is rather disingenuous coming from one who was disciplined for his use of foul language.

This action is dismissed as frivolous and malicious. 28 U.S.C. § 1915(d); *Franklin,* 662 F.2d at 1344–45 (No. 80–3309).

*83–707*

■ Franklin contends that the superintendent sent him to S & I for things he said in a letter to a member of the OSP medical care staff. Franklin says this violates his first amendment rights but he does not identify the substance of the subject communication. Therefore, Franklin's complaint does not state a claim, and I dismiss it as frivolous. 28 U.S.C. § 1915(d).

*83–708*

■ Franklin sues Oregon's Governor, Attorney General, legislators, and judges for failing "to pass Legislation which would keep our System such as The Courts, &/or Jails from being so corrupt." Franklin may have served the Attorney General.

While Franklin's stated ambition to clean up the system is a noble one, *see* L. Steffens, "W.S. U'Ren, The Lawgiver," in *Upbuilders* 285 (1912), this is not a claim cognizable in a federal court. To the extent that this complaint could be construed as a petition for a writ of habeas corpus, Franklin may amend No. 82–039 to include any new grounds for relief asserted here. In all other respects, No. 83–708 is dismissed as frivolous. 28 U.S.C. § 1915(d).

*83–709*

■ To the extent that this bigoted diatribe could be construed as a complaint, it is that a corrections officer instructed Franklin to turn off his radio or purchase earphones. Franklin says he served the defendant.

This action is patently frivolous and malicious. It is dismissed. 28 U.S.C. § 1915(d); see *Pitts v. Griffin*, 518 F.2d 72, 72 (8th Cir.1975) (per curiam).

*83–710*

■ Franklin claims a corrections officer falsely "arrested" him for destroying public property. Apparently, Franklin decorated the crutch the OSP infirmary gave him with slogans touting his gubernatorial campaign. The OSP disciplinary board declined to punish Franklin for this overzealous electioneering.

The constitutional right Franklin contends the officer violated is his "right to destruct one's own property." Franklin reasons that because he has been a taxpayer he can do what he pleases with state property. He is incorrect. This action is dismissed as frivolous. 28 U.S.C. § 1915(d).

*83–711*

■ Franklin, who is diabetic, complains that corrections officers responded too slowly to his request to be sent to the infirmary for insulin. He may have served both defendants.

According to the court of appeals, I might have subject matter jurisdiction over this claim. See *Franklin*, 662 F.2d at 1347 (No. 80–3319). However, I conclude that Franklin has no reasonable chance of succeeding on this claim. The action is therefore dismissed as frivolous and malicious. 28 U.S.C. § 1915(d).

Franklin admits he had the opportunity to go to the infirmary during regularly scheduled hours. But he forgot. He cannot then expect the corrections staff to react instantaneously to his request. Under these circumstances, the alleged eighty-two minute delay between Franklin's request and injection does not amount to deliberate indifference to Franklin's serious medical needs. See *Franklin*, 662 F.2d at 1344 (No. 80–3317).

*83–712*

■ Franklin sues his attorney, Mr. Miller, for assorted breaches of trust. There is, however, no basis for federal jurisdiction. I appointed Mr. Miller pursuant to a federal statute, 28 U.S.C. § 1915(d), to help Franklin with his federal court lawsuits. As such, Mr. Miller did not act under color of state law for purposes of section 1983. Franklin does not allege that Mr. Miller deprived him of any federal constitutional right. There is no basis for diversity jurisdiction because both parties are from Oregon. This is essentially a legal malpractice claim that belongs, if at all, in state court. See, e.g., *Troutman v. Erlandson*, 287 Or. 187, 598 P.2d 1211 (1979).

This action is dismissed as frivolous. 28 U.S.C. § 1915(d).

*83–713*

■ Franklin sues an OSP mailroom worker for refusing to deliver legal mail in inter-institution envelopes outside the prison. He complains that he cannot afford the proper envelopes. As is abundantly clear from this opinion, Franklin has never had any trouble getting his papers to this court. Recently, some of his filings were delivered wrapped in a legal document sealed with a bandage.

Apparently, Franklin misunderstands *in forma pauperis* status. Leave to proceed *in forma pauperis* means the court waives filing fees and court costs, such as transcripts. 28 U.S.C. § 1915(a). Neither we nor the State must supply stationary which meets Franklin's over exact specifications.

This action is dismissed as frivolous. *Id.* § 1915(d).

*83–714*

*83–715*

■ In these cases, Franklin alleges various OSP staff members have violated his rights under the Freedom of Information Act, 5 U.S.C. § 552. These complaints are sheer nonsense. Franklin does not explain what the defendants did to violate the Act or why the Act applies to these state defendants, let alone why the Act gives Franklin a cause of action for damages. The cases are dismissed as frivolous. 28 U.S.C. § 1915(d).

*83–716*

■ Franklin complains that a medical technician refuses to give him an electric razor when the use of a safety razor irritates a facial rash. These allegations do not cut it as an eighth amendment violation because they do not show deliberate indifference to Franklin's serious medical needs. This action is dismissed as frivolous. 28 U.S.C. § 1915(d).

*83–717*

■ Franklin complains that the lack of an elevator at OSP has kept him away from church services that are held on the upper floors. This is Franklin's fifth attempt in as many years to obtain an elevator. *See Franklin,* 662 F.2d at 1344 (Nos. 80–3308, 80–3309, 80–3314, and 80–3330). This time he hopes to rise to triumph, as well as the third floor, by basing his claim on the lofty ideals embodied in the first amendment. Even if these allegations stated a claim for relief, this action is barred by res judicata, or, alternatively, by the statute of limitations. *See Kosikowski,* 659 F.2d at 108. Case No. 83–717 is dismissed as frivolous. 28 U.S.C. § 1915(d).

*83–718*

■ Quite literally, Franklin seeks his just desserts. Apparently, the OSP food service bakes desserts in aluminum rather than stainless steel pans. Franklin will not eat desserts served from aluminum pans for fear that "scrapings" from the pans will "settle in [his] Human Joints."

This action is obviously frivolous. *Cf.* L. Carroll, Through the Looking Glass 203 (R. Green ed. 1971) (" 'He's only just out of prison, and he hadn't finished his tea when he was sent in,' Haigha whispered to Alice: 'and they only give them oyster-shells in there—so you see he's very hungry and thirsty. . . . ' ").

It is dismissed. 28 U.S.C. § 1915(d).

*83–719*

■ As in No. 83–707, Franklin complains that he was disciplined for making some unspecified communication. Without explaining what speech of his was constitutionally protected, Franklin cannot state a claim for relief. This case is dismissed as frivolous. 28 U.S.C. § 1915(d).

*83–721*

■ Franklin sues an assortment of state psychiatrists and jurists whom he claims conspired to effect his involuntary commitment to the State Hospital for a six month period in 1982. The Oregon Court of Appeals affirmed the circuit court's commitment order without opinion. *See Matter of Franklin,* 57 Or.App. 279, 646 P.2d 1379 (1982).

This action is dismissed as frivolous. 28 U.S.C. § 1915(d). The individual defendants are immune from damages under the Civil Rights Act. *Franklin,* 662 F.2d at 1345. Franklin is seeking neither direct review of his commitment, *cf. Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), nor injunctive relief from an allegedly unconstitutional statutory commitment procedure. *Cf. Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980).

■ To the extent that this suit could be construed as a petition for a writ of habeas corpus, that relief is not presently available to Franklin. *See Carafas v. La-Vallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). Franklin was not being held pursuant to the civil commitment order when he filed this lawsuit. Even if Franklin could clear this jurisdictional hurdle, his case would be moot. He alleges no due process defects in his commitment hearing that are of the type likely to recur. *Cf. Doe v. Gallinot,* 657 F.2d 1017, 1021 n. 6 (9th Cir.1981); *Tyars v. Finner,* 518 F.Supp. 502, 505 (C.D.Cal.1981).

B. *Habeas Corpus*

*83–720*

■ Franklin complains that the Parole Board has unlawfully extended his stay at OSP by, among other things, refusing to credit him for time served.

Denial of parole does not state a claim for money damages because members of the Parole Board are immune from suit under the Civil Rights Act. *Allison v. California Adult Authority,* 419 F.2d 822, 823 (9th Cir.1969). Because Franklin attacks the validity of his continuing confinement, I will construe the complaint as a petition for a writ of habeas corpus. Franklin may add these grounds to his remaining petition, No. 82–039.

Case No. 83–720 is dismissed.

### IV

To summarize: all of Franklin's cases are dismissed except for Nos. 82–038, 82–039, and 82–053. He may amend his remaining habeas petition, No. 82–039, to include any grounds he wishes to retain from the petitions I have dismissed. But Franklin must file and serve this amended petition within thirty days. After No. 82–039 has been served on the appropriate state official, I will refer the case to Judge Hogan.

As to the cases dismissed pursuant to section 1915(d): "[w]hile it does not appear that any conceivable set of factual assertions could serve to salvage these exercises in amphigory," *Demos v. Kincheloe,* 563 F.Supp. at 32 n. 1. I will give Franklin the opportunity to try. This offer does not, however, extend to the cases dismissed in Section I. Franklin has already had his chance to amend them. *See Potter,* 433 F.2d at 1088–89.

Entry of judgment will be stayed for thirty days. At the end of that time I will examine each complaint in Sections II and III in light of any supplemental material Franklin offers. I will then enter specific findings and conclusions with respect to each of his submissions.

### V

So much for Franklin's current caseload. The problem remains, however, how do I tailor an order to shelter this court from Franklin's ceaseless barrage of frivolous filings? This is not an easy task because the more effective the prophylaxis, the more

likely it will disturb the delicate balance *Franklin* sets between a litigant's access to the courts and the courts' self-preservation.

It is well within the broad scope of the All Writs Act, 28 U.S.C. § 1651, for a district court to issue an order restricting the filing of meritless cases by a litigant whose manifold complaints raise claims identical or similar to those that have already been adjudicated. *Clinton v. United States,* 297 F.2d 899, 901 (9th Cir.1961), *cert. denied,* 369 U.S. 856, 82 S.Ct. 944, 8 L.Ed.2d 14 (1962); *Demos,* 563 F.Supp. at 34–35. But this type of an order would not significantly deter Franklin because his claims are more often ridiculous than repetitive. Nevertheless, Franklin would do well to learn a lesson from Rev. Green, whose repetitive and frivolous filings backfired, earning him more jail time instead of his cherished freedom. *See In re Green,* 669 F.2d 779, 782–83 n. 10 (D.C.Cir.1981).

Some courts have found it necessary to decline to accept *in forma pauperis* filings unless the plaintiff alleged physical injury. *See, e.g., Green v. Carlson,* 649 F.2d 285 (5th Cir.), *cert. denied,* 454 U.S. 1087, 102 S.Ct. 646, 70 L.Ed.2d 623 (1981); *Green v. White,* 616 F.2d 1054 (8th Cir.1980). At first glance, this option is appealing. Franklin often alleges no more injury than "mental frustration." And these "mental frustration" cases are generally (if such matters can be put in relative terms) the least meritorious of Franklin's filings. I do not choose this route for two reasons. First, I hesitate to foreclose an inmate from challenging the conditions of his confinement. *See, e.g., Ohlinger v. Watson,* 652 F.2d 775 (9th Cir.1980); *Capps/West II,* 559 F.Supp. at 894; *Bartholomew,* 477 F.Supp. 223. Second, it probably would not work. It would not take long before all of Franklin's complaints "would allege some type of physical harm, and of course, all would be of a constitutional magnitude." *Demos,* 563 F.Supp. at 34.

This district may do well to consider a partial payment system to reduce the volume of prisoners' *in forma pauperis* civil rights complaints. *See, e.g., Evans v.*

*Croom,* 650 F.2d 521 (4th Cir.1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982); *In re Applications for Leave to Proceed in Forma Pauperis,* General Order No. 2 (N.D.Ohio Dec. 8, 1981). This operation would work as follows:

1. The inmate files the *in forma pauperis* application;

2. The Clerk's office sends a letter to the institution's financial officer who, in turn, sends a copy of the inmate's prison account card;

3. The deputy clerk calculates the inmate's income for the preceding six months; and

4. The deputy clerk sends an order instructing the inmate to prepay the filing fee, which is a percentage of the income for the preceding six months.

While I approve of this approach, any decision such as this should be made by all of the judges considering all *in forma pauperis* filings, not just Franklin's.[24]

██ It is not fair to this court or to litigants with meritorious claims or defenses for me to spend my time plowing through Franklin's papers when nearly all of his filings are frivolous. The time has come for Franklin to shoulder some of this responsibility. Commencing with the filing of this opinion and order, this court will accept for filing from Franklin only six (6) *in forma pauperis* lawsuits in each twelve (12) month period. I cannot conceive that a person, even one incarcerated in a state penitentiary, could be confronted on a more frequent basis with apparent or actual violations of his civil rights. If Franklin wishes to file more than six lawsuits he is free to do so, but he must pay as he goes. This measure will require Franklin to consider which cases are most important to him and to confine his filing to them.[25] He may just find that as he exercises some control

over his filings, his lawsuits may be given greater credence by all concerned.

If this measure does not work, I am left with but one weapon with which to smite this Hydra: section 1915(d). If the ruling triumverate allows me to cauterize the wounds, my labors may some day be at an end. If not, the Harry Franklin saga may become an epic.

IT IS SO ORDERED

---

**24.** Following the Aldisert committee's suggestion, the District of Oregon now has a law clerk who devotes herself to processing prisoner litigation.

**25.** Within the last few days, I have received four large manila envelopes from Franklin. I will return them to him so he can take another look at his proposed filings. Any he resubmits should be accompanied by the appropriate filing fee or I will count them among his six free filings for this year.